ST. LOUIS & SAN FRANCISCO RAILROAD CO. ET AL. *v.* IDA
SANDERSON ET AL.

[54 South. 885.]

1. CARRIERS. *Passengers. Master and servant. Evidence.*

Where deceased in company with another got upon the platform of a
passenger train of appellant about ten o'clock at night, intending to
ride a distance of about a mile, the fare being five cents and the
conductor did not see these two parties on the platform, nor did
they offer to pay fare, though the companion of deceased testified
that they were ready and willing to pay same and expected to do
so when the conductor should ask them. Whether under these cir-
cumstances decedent was a passenger was a question for the jury.

2. SAME. *Master and servant. Conductors.*

The general rule that a master is not responsible for acts done by the
servant outside the line of his duty and not in the service of the
master, has no application to a case where a railroad passenger con-
ductor, the *alter ego* of the company, himself inflicts the injury on
the passenger.

3. INCONSISTENT VERDICT. *Exonerating one defendant and holding another.*
*Code* 1906, *section* 4944.

An action against a railroad company and its conductor for the
wrongful killing of a passenger by the conductor is both joint and
several and although both are equally liable, the liability is based
on distinct and different legal principles, the servant because of his
personal trespass and the company because of its failure to dis-
charge its nondelegable duty towards the public in not having a
competent conductor.

4. SAME.

In such case a verdict for plaintiff against the railroad company and
against the plaintiff in favor of the conductor, though apparently
inconsistent, presents no ground for reversal of the judgment against
the company, especially in view of Code 1906, section 4944, providing
that one of several appellants will not be entitled to a judgment of
reversal because of error in the judgment against another not af-
fecting his rights.

APPEAL from the circuit court of Monroe county.

HON. JOHN M. MITCHELL, Judge.

Suit by Mrs. Ida Sanderson and others against the St. Louis & San Francisco Railroad Company et al. From a judgment for plaintiff against the railroad company, the company appeals, and plaintiffs prosecute a cross appeal from the judgment in favor of the other defendant.

This is a suit by the appellees, the widow and children of one J. P. Sanderson, for damages for killing of Sanderson by the conductor, Willis, in charge of a passenger train of the appellant railroad company. The record discloses the fact that Sanderson, in company with a young man named Pennington, got upon the platform of a passenger train of appellant about ten o'clock at night, intending to ride from Amory to Aberdeen Junction, a distance of one mile. The fare was five cents. The conductor did not see these two parties on the platform, nor did they offer to pay fares, though Pennington says that they were ready and willing to pay same and expected to do so when the conductor should ask them. The conductor testified that he did not, as a rule, work the train between these two points, but that he occasionally collected fares from persons traveling that distance, and that he did not see the deceased and his companion, nor did he know that they were on the train that night. When the train reached Aberdeen Junction, deceased and his companion got off on the side of the car, and the conductor and two of the passengers stepped off, when the conductor borrowed a pistol from one of the passengers and fired, killing Sanderson. The defense is that he did not shoot at Sanderson, and did not know he was in that direction, and that the killing was purely accidental. This question, however, was submitted to the jury; it being the theory of the appellees that the killing was not an accident, or that at least the conductor was guilty of gross, wanton negligence in firing

the pistol. Suit was brought against the railroad company and the conductor, and the jury returned a verdict for ten thousand dollars against the railroad company, from which this appeal comes.

*E. O. Sykes, Jr.,* for appellant.

We contend that the testimony showed that deceased was not a passenger at the time of his death, and, in fact, had not been a passenger on the Memphis-Aberdeen train that night. That since he was not a passenger, the act of the conductor, when he shot and killed Sanderson, was totally beyond the scope of his employment and authority, and entirely disconnected from any of his duties due his master. For which act the appellant was not liable.

The learned trial judge held that unless Sanderson was a passenger at the time of his death, plaintiff could not recover, but held that the question of carrier and passenger was one to be decided by the jury. We submit that the relation of carrier and passenger never existed between the appellant and deceased. A common carrier of passengers holds itself out as being in the business of carrying passengers from one place to another for hire, upon the intending passenger's performance of certain conditions, and his submission to certain reasonable regulations established by the carrier. The relation of carrier and passenger necessarily arises from contract, either express or implied. The intending passenger must offer himself as a passenger, and the carrier must accept him as a passenger, before the relation exists. It is not essential that the passenger have a ticket, neither does the fact of his having a ticket conclusively show him to be a passenger.

The acceptance by the carrier may be either express or implied, but there must be an acceptance.

Since the carrier owes a very high degree of care to the passenger to carry him safely, or as our court has

expressed it in the case of *Railroad Co.* v. *Humphrey,* 83. Miss. 733, it owes the passenger the "duty of exercising the utmost care and diligence," it must also be true that the passenger must have complied with all the reasonable rules and regulations of the carrier as a passenger, and have been accepted as a passenger, before the relation begins.   The passenger must have placed himself in the care of the carrier or directly within its control, with the *bona fide* intention of becoming a passenger, and must have been accepted as such by the carrier.   In this case we do not have to resort to any presumptions. or surmises, for we have the testimony of the companion of Mr. Sanderson who was with him from the time he boarded the train at the depot in Amory until he was. killed.

Charge No. 9 makes the appellant an insurer of the safety of its passengers from injury from all sources, which is not the law as shown by the following authorities.   3 Thompson on Negligence, § 2721; *Railroad* v. *Jopes* (U. S.), 142 U. S., p. 28, 35 Law Ed., p. 919.

The court erred in not entering a judgment for appellant based upon the verdict of the jury.   These three assignments will be considered together.

This suit was filed against this appellant, T. P. Willis, and the Kansas City, Memphis & Birmingham Railroad Company as defendants.

This suit is based upon the negligence of Willis, the conductor, in shooting his pistol, and the appellant is held liable on the doctrine of *"respondeat superior."* There can be no contention that the master authorized or actively participated in the firing of the pistol.   The verdict of the jury found for the plaintiff against the St. Louis & San Francisco Railroad Company in the sum of ten thousand dollars.

The verdict finds in favor of the defendant Willis, with the same force and effect that it finds against the appellant.   It says as to Willis: We find that your con·

duct was lawful, and that deceased was not killed either willfully or negligently by you, but that he was killed as a result of an accident pure and simple, for which you are in no way responsible.

The same verdict says as to the appellant: We find against you because Sanderson was a passenger at the time he was killed, and you owed him the duty not to negligently injure him, and that you violated this duty when your conductor or agent shot him, which was a negligent act of your agent for which you, as the master, are responsible.

That the verdict was in favor of Willis is well settled by the following authorities: *Railroad Co.* v. *James* (Texas), 10 S. W. 744; *Milling Co.* v. *Abernathy*, 35 N. E. (Ind.) 399; *Doremus* v. *Railroad Co.*, 54 L. R. A. (Wash.) 649; *Railroad Co.* v. *Clarke*, 85 Miss. 651.

If the appellant and Willis were joint tortfeasors in the killing, then we would have no right to complain of this verdict, but to be joint tortfeasors, the parties must all actively, in person, participate in the wrong, and the master could only participate in it by authorizing the wrong to be done. Each tortfeasor is himself guilty of a wrong towards the injured independent of the wrong committed by the other tortfeasors. Neither can there be any right of contribution among them, for all of them are *in pari delicto*. This is in no way true in this case. If deceased were a passenger and was negligently killed by Willis, then appellant is liable in this case technically in trespass upon the case, and Willis would be liable in trespass. It is impossible for appellant, however, to be liable and Willis not liable. Yet Willis could be liable for the killing and appellant not liable. As for instance, if Sanderson were not a passenger, and was negligently or intentionally shot by Willis.

This verdict in acquitting the active participant of any negligence, and yet in holding his principal liable, is contrary to the law and the evidence, and shows upon its

face that it is the result of prejudice and passion against this appellant. We know of only one authority which apparently seems to uphold such a verdict, and that is in this state. The case of *Railroad Co.* v. *Clarke,* 85 Miss. 691.

It is possible that the facts of that case and these are so different that they may be distinguished. If the act causing the injury in that case was one of nonfeasance of the engineer, the company would be liable and the engineer not. The acts complained of in the Clarke case were further part of the ordinary duties of the engineer, in the running of his train, for which the master is made liable to the public, to strangers. We could not be made liable to the public or to any stranger for the unauthorized shooting of Willis. The opinion in the Clarke case assumes that the engineer and railroad company were equally liable, in other words, if the engineer be liable in any phase of the case, then the railroad is liable. But in our case the appellant would not be liable unless deceased were a passenger, though Willis might.

We now invite the attention of the court to some of the authorities which sustain our views about this verdict. In the case of *Railroad* v. *Jopes,* a Mississippi case reported 142 U. S., p. 28, 35 Law Ed. 919; *Doremus* v. *Root et al.,* 23 Wash. 710, 54 L. R. A. 649; *Gulf C. & S. Fe R. Co.* v. *James,* 75 Tex. 12, 10 S. W. 744; *Howard* v. *Jackson,* 91 Ga. 319, 18 S. E. 132; *Kinkler* v. *Junica,* 84 Tex. 120, 19 S. W. 359; *Gulf C. & S. Fe R. Co.* v. *James,* 75 Tex. 12, 10 S. W. 744; *June* v. *Grimmett,* 4 W. Va. 104; *Westfield Gas & Mill Co.* v. *Abernathy,* 8 Ind. App. 73, 35 N. E. 399; *Hayes Admx.* v. *Telephone Co.,* 218 Ill. 414, 2 L. R. A. (N. S.) 764; *Stevick* v. *N. P. R. R. Co.,* 39 Wash. 506, 81 Pac. 1001; *McGinnis* v. *Railroad Co.* (200 Mo.), 9 L. R. A. (N. S.) 880.

*Leftwich & Tubb,* for appellee.

This was a passenger train calling for passengers at every station, throwing open its doors to receive them, and they are as a matter of law charged with the knowledge of those who take passage at regular stations where the trains regularly stopped to take on passengers. The company cannot escape from its liabilities under the facts of this case by saying that they did not see these young men get on; it was their business to see them and they are charged with the knowledge the facts established. These two parties rode but a single mile, to another regular stop on this railroad, the Aberdeen Junction, and there they alighted at the regular place, not at a station house to be sure, but in the path by the side of the track beaten down by the inhabitants of the little village, and where the patrons of the road alighted and got onto said train. The deceased and his companion certainly got on at Amory and they certainly got off at the Junction where deceased was found dying, and every incident and every presumption in favor of the deceased being a passenger is raised from the facts and the circumstances in the case. 3 Thompson on Negligence, §§ 2635 and 2640; *Creed* v. *Pa. Railway Co.,* 27 Am. Rep. 693; *Railway* v. *O'Keefe,* 61 Am. St. Sep. 78, and cases there cited; note, *Perkins* v. *Railway Co.,* 82 Am. Dec. 293, and cases there cited; 4 Elliott on Railways, § 1578.

And, also, says Judge Elliott in his work on Railroads, vol. 4, sec. 1578, "We think it is safe to say that the general rule is that every one on the passenger train of a railroad company, and there for the purpose of carriage, and with the consent expressed or implied of the company, is presumptively a passenger." 3 Thompson on Negligence, § 2675; note, *Perkins* v. *Railroad,* 82 Am. Dec. 293; *Creed* v. *Railway,* 27 Am. Rep. 693; *Railway* v. *Books,* 98 Am. Dec. 229.

Of course, the bona fide intention to become a passenger and to pay the consideration for so becoming

when called upon so to do must exist before that is presumed, and if there is lurking in the heart of the traveler a disposition to beat the railroad company out of its stipend and to rob it of its revenue, the burden rests upon them to show it.   6 Cyc. 536, 537, 538, 539; 3 Thompson on Negligence, § 2638; 4 Elliott on Railroads, § 1579; 2 Woods' Railway Law, § 1037; note, *Railway* v. *O'Keefe,* 51 Am. St. Rep. 74, 75, 82; *Webster* v. *Fitchburg Railway Co.,* 24 L. R. A. 521.

Certainly this undisputed evidence indisputably shows the *bona fide* intention in the mind of the deceased and his companion; Sanderson is now dead at the hands of the conductor of this train and cannot speak, but every fact and circumstance as set up by his companion who worked with him that day and who was going with him to his own home ought to be invoked in behalf of his innocency and good intentions.

"One who enters a railroad car intending in good faith to become a passenger is such in fact," says Judge Freeman in his note to the *O'Keefe case,* 61 Am. St. Rep. at page 82.

Much is said in the brief and in the argument and in the evidence about Sanderson and Pennington paying no fare, but the payment of fares is not necessary to make them passengers.   Our courts have so held and the courts generally have so held, and it is especially unnecessary in proving a relation under the circumstances of this case where the evidence shows that everybody was allowed to ride without the payment of fare.   *Railroad* v. *Beardsley,* 79 Miss. 417, 30 South. 660; *Hurt* v. *Railroad Co.,* 40 Miss. 391; note, *Railway* v. *O'Keefe,* 61 Am. St. Rep. 85, 87; 3 Thompson on Negligence, § 2634 and 2642.

Whether the deceased was a passenger or a trespasser, as we have already anticipated and as this court has already decided, was a question for the jury.   Under all the circumstances that hedge in a question of this sort,

the final judge and the best judge is the jury, and the courts have so held. *Railway* v. *Beardsley,* 79 Miss. 417, 30 South. 660; note, *Railway* v. *O'Keefe,* 61 Am. St. Rep. 103; *Arnold* v. *Railway Co.,* 2 Am. St. Rep. 542; *Heggley* v. *Gilmen,* 35 Am. Rep. 450; *Gordon* v. *Waycross,* 54 Am. St. Rep. 435.

We do not think we ought to be called upon to argue this subdivision of the case at very great length in the face of the well known position taken some time since by this court. In bringing the suit, the St. Louis & San Francisco Railroad Company, a foreign corporation, and the Kansas City, Memphis & Birmingham Railroad Company, a domestic corporation, and T. P. Willis, the conductor, were all made defendants in this case, as plaintiffs had a right to make them, and the jury were charged as they had a right to be charged and given to understand that they could find one or all of the defendants guilty of the wrong and injury, and this was a matter of discretion for the jury. It was not anywhere asked or suggested to the jury that if they visited no part of the judgment for damages against Willis, that therefore the railroad company, the real responsible party, would escape; that was not even suggested in the trial of the case. Usually the servant of the company is entirely impecunious and nothing can be made out of him and a judgment against him would amount to nothing. The jury in the instant case brought in a verdict against the St. Louis & San Francisco Railroad Company only, the real responsible defendant. It must be supposed that the plaintiffs and their counsel, when they brought the suit and tried the case, brought it and tried it in the light of the holding of this court in the case of *Railway Co.* v. *Clark,* 85 Wis. 691. That it took no hazard in submitting to the jury the question of damages with all the defendants in the case because they doubtless would not have hazarded a verdict with Willis as defendant had they jeopardized their entire recovery, for it would

have been a very simple proposition to have taken a non-suit as to Willis. Now, after the case has been fought out, and only in the face of the well known position of this court, we submit that we ought not to be called upon to re-open the question as to the inconsistence of the verdict. The Clark case distinctly holds that where the verdict rightfully convicts the master and wrongfully acquits the servant, it ought not to be set aside on motion of the master because of the acquittal of the servant. Our own court not only cites authorities from this state in support of the proposition, but cites a leading and well proved case from another state: *Railroad Co.* v. *James,* 15 Am. St. Rep. 743, taking the same position.

WHITFIELD, C.

On the trial of this case, which was an action against the St. Louis & San Francisco Railroad Company and T. P. Willis, the conductor, the jury returned a verdict in favor of the plaintiffs against the railroad company for ten thousand dollars damages. But the verdict was silent as to the codefendant, Willis, the conductor. We think, on the authorities, that this amounted to a verdict exonerating Willis, to the same extent as if they had found a verdict for Willis. After the verdict, Willis made a motion, based on this theory, and the court sustained the motion, and entered a judgment discharging Willis from liability. The cross-appeal is prosecuted from this. We think the action of the court was correct on the matter involved in the cross-appeal.

The defendant company later made a motion in arrest of the judgment against it. The railroad company presents four defenses: First, that the firing of the pistol by the conductor, Willis, and the killing of the deceased, Sanderson, the husband and father of the plaintiffs, was an accident pure and simple, and hence that the company was not liable; second, that the firing of the pistol and

the killing of the deceased by the conductor, Willis, if intentional, was a thing not done in the line of his duty while engaged in the service of his master, and hence, being a thing outside the scope of his employment, and not in the line of his duty, the company was not liable; third, that the deceased was not a passenger, and hence the company was not liable; and, fourth, that the verdict and judgment exonerating Willis, the conductor, necessarily operated logically as an exoneration also of the master, and that the verdict for Willis and against the company was an inconsistent, irregular, and illogical verdict, and that the motion in arrest of the judgment, therefore, should have been sustained.

As to the first, the verdict of the jury must be taken as having established the fact that the act was not accidental.

As to the third defense, that the deceased was not a passenger, we think, also, that the evidence as to whether he was a passenger, under all the peculiar circumstances of this particular case as shown by the evidence, was a question of fact for the jury to determine, on proper instructions from the court. The defendant company got the benefit of instructions which told them in varying forms that if they believed from the evidence that the deceased was concealing himself so as to evade the payment of his fare, that he did not have the *bona fide* intention when he boarded the train of paying his fare, but was stealing a ride and attempting to evade his fare, they should find for the defendant company. Under these full instructions on the testimony in the case, the time of the ride being only about five minutes, we think the fact that he was a passenger was properly submitted to the jury for their determination, and that the verdict consequently establishes the fact that he was a passenger. The authorities on this subject have been admirably collected by the counsel on both sides, whose

briefs are able and exhaustive, and we refer to them without further comment.

As to the second proposition, if it should be conceded that the act was not one in the line of the conductor's duty, but was one wholly outside of the scope of his employment and the line of his duty, it is thoroughly well settled that this beneficent principle, applicable in proper cases, that the master is not responsible for the acts done by the servant outside the line of his duty, and not in the service of the master, has no application whatever to a case where the conductor, the alter ego of the company, himself inflicts the injury on the passenger. In Thompson on Negligence, vol. 3, § 3187, it is said: "This calls up a plain distinction between the liability of a carrier of passengers for assaults or insults committed by his own servants upon his passengers and for similar wrongs committed by them upon trespassers or third persons. For such wrongs committed upon his passengers he will be liable in any event, whether in doing them his servant was acting within the scope of his employment or not, since they are a breach of his contract to carry his passenger in safety and with good treatment." And in a masterly opinion by McClellan, C. J., *Birmingham Ry. & Electric Co.* v. *Baird,* reported in 130 Ala. 334, 30 South. 456, 54 L. R. A. 752, 89 Am. St. Rep. 43, this doctrine is elaborately discussed and thoroughly vindicated, citing and reviewing a large number of authorities. Judge McClellan, speaking for the Supreme Court of Alabama in that case, says: "And it is of no consequence, when the wrong is committed by the carrier's own servant, even that servant particularly charged with the duty of conserving the passenger's well-being, en route, that the act bears no connection or relation with or to the duties of such servant to the carrier, and is not committed as an incident to the discharge of any duty, but is utterly violative of all duty, and apart and away from the scope of employment, as that term is

understood in the class of cases first above referred to. The carrier is liable in such cases, because the act is violative of the duty it owes through the servant to the passenger, and not upon the idea that the act is incident to a duty within the scope of the servant's employment; and it is manifestly immaterial that the act may have been one of private retribution on the part of the servant, actuated by personal malice toward the passenger, and having no attribute of service to the carrier in it. It is wholly inapt and erroneous to apply the doctrine of scope of employment, as ordinarily understood, to such an act. Its only relation to the scope of the servant's employment rests upon the disregard and violation of a duty imposed by the employment. This is, beyond question, we think, the true doctrine on principle, and while, as indicated above, there are adjudications against it, the great weight of authority supports it."

He quotes in that opinion the following from Chief Justice Ryan in the case of *Craker* v. *Chicago Railroad Company,* 36 Wis. 657, 17 Am. Rep. 504: "But we need not pursue the subject; for, however that may be in general, there can be no doubt of it in those employments in which the agent performs a duty of the principal to third persons, as between such third persons and the principal. Because the principal is responsible for the duty, and if he delegate it to an agent, and the agent fail to perform it, it is immaterial whether the failure be accidental or willful, in the negligence or in the malice of the agent, the contract of the principal is equally broken in the negligent disregard, or in the malicious violation, of the duty by the agent. It would be cheap and superficial morality to allow one owing a duty to another to commit the performance of his duty to a third, without responsibilty for the malicious conduct of the substitute in the performance of the duty. If one owe bread to another, and appoint an agent to furnish it, and the agent of malice furnish a stone instead, the prin-

cipal is responsible for the stone and its consequences. In such cases, malice is negligence. Courts are generally inclining to this view, and this court long since affirmed it.'' And he also quotes the following from Elliott on Railroads: ''There is much apparent conflict among the authorities upon this subject; but we think some of it is due to the use of the term 'scope of employment,' or 'line of duty,' in a different sense in different cases, or to a failure to place the decision on the correct ground. It is not merely a question of negligence in such cases, nor is it a question strictly depending upon the scope of the servant's particular employment. It is a question of the absolute duty of a railroad company to its passengers as long as that relation subsists, and a breach of that duty on its part, whether caused by the willful act of an employee or not. . . . Either the company or the passengers must take the risk of infirmities of temper, maliciousness, and misconduct of the employees whom the company has placed upon the train, and to whom it has committed the discharge of its duty to protect and look after the safety of its passengers. A passenger has no control over them, and the company alone has the power to select and remove them. It is, therefore, but just to make the company, rather than the passengers, take the risk, and to hold it responsible.'' 4 Elliott on Railroads, § 1638.

We approve this as the true rule in this character of cases. The supreme and paramount duty of the conductor, who is the master in such cases, is to protect the passengers from injury, and the absolute character of this duty excludes entirely the operation of the other principle, applicable in proper cases, that the master is not liable for the servant's act, where that act is clearly not in the line of his duty and done outside the scope of his employment. It seems to us a perfectly sound rule, founded in the highest and most beneficent public policy.

The only remaining defense is the technical one, founded in the rules of pleading and practice, to wit, that the verdict and judgment exonerating the conductor necessarily and logically resulted inevitably in the exoneration also of the master. The reasoning is that the master can only be responsible, in a case like this, because the servant is, on the doctrine of *respondeat superior*. It is said with great ingenuity and ability that the master can only be derivatively liable; that is, he is liable, if at all, only because of the act of the servant, when that act makes the servant liable, and a verdict, as in this case, for the conductor, and against the defendant, is inconsistent, irregular, and illogical. The Texas Supreme Court, in *Railway Company* v. *James,* 73 Tex. 12, 10 S. W. 744, 15 Am. St. Rep. 743, which was a case exactly like this, admitted that the verdict was apparently inconsistent, yet nevertheless said it presented no ground on that account for a reversal of a judgment against the company.

In the case of *Railroad Company* v. *Clarke,* 85 Miss. 697, 38 South. 97, this court followed the Texas Supreme Court, and rested its judgment on two grounds: First, that if it were assumed in such case that the company and its servants were jointly liable, nevertheless the right of action which the plaintiff had was both joint and several, and that, though both were equally liable, the liability was based on distinct and different legal principles—the servant because of his personal trespass, and the company because of its failure to discharge its nondelegable duty towards the public regarding its custody and management of its dangerous instrumentalities, or, as here, in not having a competent conductor. And the court rests its judgment in the second place on our statute (section 4944 of the Code of 1906; section 4378 of the Code of 1892), which is in the following words: "In all cases, civil and criminal, a judgment or decree appealed from may be affirmed as to some of the appellants and be reversed as to others; and one of sev-

eral appellants shall not be entitled to a judgment of reversal because of an error in the judgment or decree against another, not affecting his rights in the case. And when a judgment or decree shall be affirmed as to some of the appellants and be reversed as to others, the case shall thereafter be proceeded with, so far as necessary, as if separate suits had been begun and prosecuted; and execution of the judgment of affirmance may be had accordingly. Costs may be adjudged in such cases as the supreme court shall deem proper." This statute was construed in the case of *Weis* v. *Aaron,* 75 Miss. 138, 21 South. 763, 65 Am. St. Rep. 594. We there said: "When the action of the court below results in merely reversible error as to one of the parties, the other cannot assign here that error."

We think this statute, with this construction placed upon it, is a perfect answer to the argument of learned counsel for appellant on the motion in arrest of judgment. The error assigned by the railroad company, that the verdict exonerating Willis, the conductor, was wrong, at the same time a verdict against the company was rendered, under our statute, and the construction referred to here is at most merely a reversible error as to Willis, not affecting the validity of the judgment against the railroad company. Besides all of which, it is further to be said that we have recently reviewed, on full consideration, the case of *Clarke* v. *Railroad,* in the case of *Nelson* v. *I. C. R. R. Co.,* 53 South. 619, and approved and reaffirmed the doctrine of the Clarke case on this point, and we remain satisfied of the correctness of our conclusion on the grounds indicated. There are cases to the contrary, which are pointed out by the learned counsel for appellant; but those cases were decided in the absence, so far as they show, of any statute like ours on this subject. Our statute was manifestly intended to do away with the opposite rule, as one which would in many cases sacrifice the substantial rights of parties to

a mere rule of procedure, founded on too refined a basis for the practical administration of justice. In the case of ·*Sellards* v. *Zomes,* 5 Bush. (Ky.) 90, cited in *Louisville Mail Company* v. *Barnes,* 117 Ky. 860, 79 S. W. 261, 64 L. R. A. 574, 111 Am. St. Rep. 273, the court said: ·"The liability of joint trespassers is several, and any one or all of them may be sued for the entire wrong."

Consequently since our statute of 1836, authorizing several judgments, and dismission or release of one or more who are sued, cannot *per se* release the others. This construction of the Kentucky statute is exactly our construction of our statute. See, also, the elaborate notes to *Louisville Mail Company* v. *Barnes, supra,* and the note to *Abb* v. *Northern Pacific Railway Company,* 92 Am. St. Rep. 872. And see the opinion of this court in *Bailey* v. *Delta Electric Company,* 86 Miss. 634, 38 South. 354, where, in concluding the opinion, it was said: "This is more in· accord with justice and in better harmony with the principles of enlightened jurisprudence, which will not permit a party suffering a wrong to be deprived of his right to redress by any purely technical reason."

*Affirmed on appeal.*

*Affirmed on cross-appeal.*

PER CURIAM. The above opinion is adopted as the opinion of the court, and for the reasons therein indicated the judgment of the court below is affirmed, both on the appeal and cross-appeal.