319 So.2d 658 (1975)
CAPITAL TRANSPORT COMPANY
v.
Linn W. McDUFF.
No. 48260.
Supreme Court of Mississippi.
October 6, 1975.
Rehearing Denied October 27, 1975.
*659 Brunini, Everett, Beanland & Wheelers, Loyacono, Vicksburg, for appellee.
Ramsey, Bodron & Thames, P. Kelly Loyacono, Vicksburg, for appellee.
Before GILLESPIE, C.J., and ROBERTSON and BROOM, JJ.
BROOM, Justice:
This tort case arising out of an intersectional vehicular collision was brought by appellee (plaintiff), McDuff, against the appellant (defendant), Capital, and its truck driver agent, Meadows. A jury verdict in the amount of $50,000 was returned in favor of appellee as against Capital Transport only. We affirm.
*660 The controlling issue is: Where a master and servant are made joint defendants to a suit based solely on the servant's tortious conduct, can a verdict against the master only be upheld?
Scene of the accident injuring appellee on January 24, 1972, was the intersection of U.S. Highway 61 and the old Mississippi River bridge just south of Vicksburg. Admittedly, the negligence of Meadows, the driver of Capital's Mack truck filled with 8,000 gallons of gasoline, was the sole negligence complained of and the jury was so instructed. Appellee's version was that he entered the intersection (headed east) from a stopped position after the traffic signal facing him turned green. His case was based upon evidence that appellant's driver (headed south on Highway 61) ran a red light and hit appellee. Truck driver Meadows said he lawfully entered the intersection on a green light, and that the cause of the collision was appellee's "jumping" his light and entering the intersection without looking.
On a substantial issue of material fact the case was submitted to the jury by instructions on the negligence of the agent Meadows and the liability of Capital "for the negligence, if any, of its driver, Jim Meadows, if he were operating his truck within the scope of his employment." The jury's verdict was:
"We, the jury, find for the Plaintiff, Linn W. McDuff, against the Defendant Capital Transport Company, Inc. and assess his damages at $50,000."
The verdict was silent as to the co-defendant Meadows, the driver agent. In the trial court's judgment entered against Capital was an adjudication that:
"No verdict having been rendered against the Defendant, Jim H. Meadows, judgment is hereby rendered in favor of the Defendant Jim H. Meadows and this cause is hereby dismissed with prejudice as to Jim H. Meadows."
Capital filed a Motion for Judgment Notwithstanding the Verdict. The motion asserted that exoneration of the agent from negligence (when the only negligence charged against Capital arose out of the acts of its agent Meadows), should also exonerate the principal, Capital. Capital also moved for a new trial, but both motions were overruled. No appeal was taken by plaintiff (appellee) from the judgment in favor of Meadows.

I.
For some time it has been the established law in this state that a case will not be reversed simply because a master is held liable where the servant is exonerated. Should it be admitted (for discussion purposes) that the verdict is irregular and that under the doctrine of respondeat superior the jury should have returned its verdict against both the master and the servant, such a result is no valid argument to deprive the appellee of the verdict which he did obtain. Gulf Refining Co. v. Myrick, 220 Miss. 429, 71 So.2d 217 (1954); Rawlings v. Inglebritzen, 211 Miss. 760, 52 So.2d 630 (1951); I.C.R.R. v. Clark, 85 Miss. 691, 38 So. 97 (1905).
In a 1971 case, D.W. Boutwell Butane Company v. Smith, 244 So.2d 11 (Miss. 1971), this Court refused to set aside a jury verdict rendered against the master only. There the master's liability depended solely upon the negligence of its co-defendant and servant who was not included in the judgment. Boutwell is strikingly similar to the present case and we think the result reached therein was correct. Here as in Boutwell the evidence shows that the plaintiff was injured as the direct result of the servant's negligence which was imputed to the master.
It is argued that the rule in this jurisdiction which permits a verdict and judgment against the master only when both the servant and master are sued jointly is contrary to the great weight of authority. *661 We are urged to overrule the cases cited above and no longer permit such a verdict and judgment against the master only.
While Mississippi may, in a sense, be said to be in the minority on this question, this state has a statute, Mississippi Code Annotated section 11-3-37 (1972) which places the appellant here in a different posture from that which he would occupy in other states having no such statute. The statute has been in force since the Code of 1880 and a portion of it reads:
[O]ne of several appellants shall not be entitled to a judgment of reversal because of an error in the judgment or decree against another, not affecting his rights in the case.
Since just after the turn of the century the quoted language as spoken by the legislature has been construed by this Court, in an unbroken line of cases, to mean that a master, such as appellant here, cannot complain of a verdict against him only. I.C.R.R. v. Clark, supra; Boutwell, supra. Knowing of our construction, the legislature has not seen fit to alter or repeal the statute.
Even if we had no such statute, the appellant cannot be logically heard to say that the judgment must fail merely because the jury wrongfully omitted its servant (truck driver) from the verdict. Of what avail should it be to appellant that its co-defendant (servant) was so fortunate as to be let out or even given a windfall? The appellee (plaintiff) is the only one who has posture to raise such a complaint and he has not cross-appealed. In this regard, rather than concluding the jury exonerated the truck driver, it is equally logical, if not more so, to conclude that the jury found him guilty of negligence. Otherwise, the verdict could not be explained and the verdict of a jury must be accorded the presumption of rightfulness. Appellant argues that the jury exonerated the driver and erred in not exonerating appellant. Conversely (had he cross-appealed) appellee could make the equally valid argument that the jury erred not in returning the verdict against appellant but by its failure to return a verdict against the truck driver. We deem it inappropriate and unnecessary to second guess the jury and say what it intended to accomplish by naming only appellant in finding for appellee.
Even though appellant and its servant, the truck driver, were not joint tortfeasors, they are jointly and severally liable. The appellee could have taken a nonsuit at any time before the case was submitted to the jury. As was said by Griffith, J., in the Court's opinion in Thomas v. Rounds, 161 Miss. 713, 137 So. 894 (1931):
Appellee therefore could have sued appellant, Thomas, alone, and for the same reason may, as she did, take judgment alone against him. The doctrine in its practical application, in the matter of the entry of judgments, has been carried even further than is here involved, as may be seen in Illinois Cent. R. Co. v. Clarke, 85 Miss. 691, 38 So. 97, and in St. Louis & S.F.R. Co. v. Sanderson, 99 Miss. 148, 54 So. 885, 46 L.R.A. (N.S.) 352. (161 Miss. at 718-19; 137 So. at 894.)
To rule that the verdict and judgment against Capital should be reversed because the jury may have erred as to the truck driver would compound the error. It can hardly be urged as a legal principle that the end justifies the means or that two wrongs make a right. We are not willing to pyramid one error on top of another to reach a result desired by a litigant even though its co-defendant was not literally held liable by the jurors on account of apparent lenity or failure to speak their real conclusions.
In its scholarly brief Capital urges that Myrick, supra, should be expressly overruled and that clarification should be made of Boutwell, supra. Interesting here is the fact that at the trial level Capital made no objection to appellee's instruction *662 which expressly authorized the jury to find against Capital only. Rather than unduly monitoring the jury, or second guessing it, or prospectively ruling that a jury cannot find against the master only as was done in this case, our task as an appellate court is to determine whether or not the verdict against Capital only was justified upon the law and the evidence. We conclude the record establishes such justification on the law and evidence notwithstanding Capital's truck driver could have justly suffered a verdict against him.

II.
The only other assignment of error which we reach is the argument that the amount of the $50,000 verdict included punitive damages and could not be justified on the basis of actual damages alone.
According to the record, the appellee established over $3,000 expenses related to his hospitalization, doctor and medical bills. His spleen was ruptured, necessitating its surgical removal. As a result of the splenectomy, blood filled his abdominal cavity, requiring that it be periodically cleaned out. In addition to this, he had five ribs fractured in the accident as well as a blood clot in his left lung. Appellee's physician, Dr. McPherson, testified that he was in constant and severe pain, made more intense by being required to clear his lungs by coughing as much as possible in order to avoid the danger of pneumonia. The pain and agony suffered by the appellee was so excruciating that in order to comfort him he was administered morphine, phenaphel, and dilaudid.
While the amount of the verdict may be in excess of what this Court would have rendered, we cannot say that it was not supported by the evidence, or that it was not responsive to the evidence, or that it was so excessive as to indicate either bias or prejudice on the part of the jury. We do call to the attention of trial judges and attorneys that it would be appropriate (in cases where both actual and punitive damages are sought) to insure that jury verdicts reflect precisely the amount of actual damages and the amount of punitive damages awarded. In such cases the jury should be instructed to cause their verdict to reflect separate amounts for actual and punitive damages. This would obviously have the salutary effect of making lighter the burden of this Court (and trial courts) when considering questions related to the adequacy, excessiveness, or validity of jury verdicts.
Affirmed.
The case was considered by a conference of the Judges en banc.
GILLESPIE, C.J., RODGERS, P.J., and INZER and WALKER, JJ., concur.
SUGG, PATTERSON, SMITH and ROBERTSON, JJ., concur in part and dissent in part.
SUGG, Justice (concurring in part and dissenting in part):
I concur with the majority that this case should be affirmed. However, I do this only because the case was tried and the jury was instructed in accordance with the rule laid down in Railroad Co. v. Clarke, 85 Miss. 691, 38 So. 97 (1904).
In Clarke, the Railroad Co. and its engineer were sued for damages. The jury returned a verdict against the Railroad Co. but in favor of the engineer. The Court affirmed and stated that, although the engineer and Railroad Co. were equally liable, the liability was based on different legal principles, the engineer because of his personal trespass, the Railroad Co. because of its failure to discharge a non delegable duty to the public regarding the management of its locomotive. When the Court held that the Railroad Co. was liable because of its failure to discharge a non delegable duty, it was stating in another way *663 that the Railroad Co. was vicariously liable for the tort of its servant. The vicarious liability of a master has been referred to as imputed negligence, constructive liability and respondeat superior, but the liability of the master is the same regardless of the terminology used.
In Railroad Co. v. Sanderson, 99 Miss. 148, 54 So. 885 (1910), the Court added a new reason for affirming recovery against a master for the tort of its servant. The Court held that a verdict for the plaintiff against the Railroad Co., and against the plaintiff in favor of the conductor, although apparently inconsistent, presented no ground for reversal of the judgment against the Railroad Co. in view of Section 4944, Code of 1906 [now Mississippi Code Annotated section 11-3-7 (1972)][1]. These cases have been followed many years, the most recent case being Boutwell Butane Co. v. Smith, 244 So.2d 11 (Miss. 1971).
Section 11-3-37 is properly applied when joint tort feasors are sued. There is a well recognized distinction between "joint tort feasors" and the vicarious liability of a master where the liability of the master is base solely on the negligence of the servant. This distinction was put in its proper perspective by Justice Griffith in Granquist v. Crystal Springs Lumber Co., 190 Miss. 572, 1 So.2d 216 (1941), in the following language:
The term "joint tort feasors" means that two or more persons are the joint participants or joint actors, either by omission or commission, in the wrongful production of an injury to a third person. There the act or omission of each is his own act or omission, but the acts or omissions are concurrent in, or contribute to, the production of the wrongful injury, so that each actor is, on his own account, liable for the resulting damages. But when the liability of a principal for the tort of an agent, or that of the master for the wrong of a servant, has grown out of a tort in which the agent or servant is the sole actor, whence the liability of the principal or master is an imputed or constructive liability and has its sole basis in the doctrine of respondeat superior and in nothing else, the liability is joint and several, but they are not joint tort feasors. (190 Miss. at 581, 1 So.2d at 218)
The statute should be applied in the case of joint tort feasors because in such cases the separate actions of two or more persons wrongfully produce an injury to a third person. A jury may find that only one of the actors was negligent and thus absolve the others from liability without the verdict being inconsistent. However, the statute should not apply in the case of master and servant, or principal and agent, where the servant or agent is the sole actor. When such servant or agent is acquitted by a jury, there is no rational basis to hold that the master or principal remains liable. When the person whose negligence causes an injury is acquitted, but in the same verdict his employer or principal is held liable, and where the liability of the employer or principal can only arise from the negligence of the person acquitted, such verdict is manifestly unjust. The statute should not be used as a shield against correcting such injustice.
In Granquist, supra, Granquist sued Thorpe A. Huntington the servant of Crystal Springs Lumber Co. in U.S. District Court and obtained a judgment against Huntington for $500. Granquist then sued Crystal Springs Lumber Co. which plead Granquist's judgment against *664 its servant as a bar in the subsequent action against it. A demurrer to the plea was overruled, Granquist declined to plead further, and his suit was dismissed. On appeal the case was affirmed, and this Court noted that the issue was summarized in the brief of counsel as follows:
"The sole and one question here presented is whether the recovery of a valid, collectible judgment against a servant, with full knowledge of all the facts, is a bar to a subsequent action against the master whose liability arises solely and alone by virtue of the doctrine of respondeat superior, and without fault on his own part, the latter action being for the identical act of negligence." (190 Miss. at 581, 1 So.2d at 218)
The rule thus obtains in this state that, in actions based solely on the tort of a servant, if the plaintiff recovers against a servant he may not thereafter recover against the servant's employer for the same injury. Two corollaries naturally follow: (1) In actions based solely on the tort of a servant, if the plaintiff recovers against the servant's employer, he may not thereafter recover against the servant for the same injury. (2) In actions based solely on the tort of the servant, if plaintiff fails to recover against the servant, he may not recover against the servant's master for the same injury in the same or a subsequent action.
The second corollary, which is the majority rule in the United States, may be stated as follows: where a master and servant are sued jointly in an action based solely on the tortious conduct of the servant, and the servant is acquitted, there can be no recovery against the master. 53 Am.Jur.2d Master and Servant § 406 at 413, 57 C.J.S. Master and Servant § 619b at p. 421. Numerous cases support the majority rule.
The rationale of Clarke, Sanderson and their progeny has been the subject of criticism by this Court. In Gulf Refining Co. v. Myrick, 220 Miss. 429, 71 So.2d 217 (1954), Justice Roberds, in a separate opinion stated:
I do not dissent in this case because the cases cited have held that the master may be liable for negligence of the servant even though the jury finds the servant is not negligent. However, it is opportune for me to say that in my opinion such a conclusion violates all logic, reason and common sense. (220 Miss. at 438, 71 So.2d at 220-221)
Since Clarke and Sanderson have been followed for many years, they should not be overturned except prospectively. I dissent to the extent of following these cases in the future and would announce that, in all cases tried after the publication of this opinion, where the liability of the master or principal rests solely on the act of a servant or agent, a verdict for the servant or agent would be a verdict for the master or principal.
PATTERSON, SMITH and ROBERTSON, JJ., join in this dissent.
NOTES
[1] In all cases, civil and criminal, a judgment or decree appealed from may be affirmed as to some of the appellants and be reversed as to others; and one of several appellants shall not be entitled to a judgment of reversal because of an error in the judgment or decree against another, not affecting his rights in the case. And when a judgment or decree shall be affirmed as to some of the appellants and be reversed to others, the case shall thereafter be proceeded with, so far as necessary, as if the separate suits had been begun and prosecuted; and execution of the judgment of affirmance may be had accordingly. Costs may be adjudged in such cases as the supreme court shall deem proper.