GULF & S. I. R. Co. *v.* CARLSON.*

(Division A. Dec. 15, 1924.]

[102 So. 168. No. 24563.]

1. RAILROADS. *Whether crossing signals were given held for jury.*

In action for death of bus passenger killed in collision between train and bus at crossing, whether bell of locomotive was sounded and whistle blown on approach of crossing as required by Hemingway's Code, Section 6669, Code 1906, Section 4045, *held* for jury.

2. CARRIERS. *Bus driver, who tried to cross track in front of approaching train, held grossly negligent.*

Bus driver, who tried to cross track with knowledge of approaching train or who could have seen train if he had looked or listened, *held* guilty of gross negligence.

3. TRIAL. *Argument of counsel to jury that defendant was liable because court had directed verdict for codefendant held proper.*

In action against bus company and railroad for death of bus passenger killed in collision between bus and train at crossing, in which court directed a verdict for bus company, statements of plaintiff's counsel in argument to jury that court had held bus company not liable, and that it being conceded that one of defendants was liable, it was duty of jury to return verdict against railroad company, *held* proper.

4. NEGLIGENCE. *Negligence of bus driver not imputed to passenger.*

In action for death of passenger of bus killed in collision between bus and train at crossing, bus company's negligence could not be charged to passenger.

5. TRIAL. *Rule as to direction of verdict for one tort-feasor stated.*

In action against alleged joint tort-feasors, the court may direct a verdict in favor of one, but before doing so it ought to clearly ap-

pear that there is no evidence tending to show liability on part ·of party so dismissed, and that no injury will thereby be inflicted on codefendant.

6. APPEAL AND ERROR. *Erroneous direction of verdict for codefendant in action for death held cause for reversal as to remaining defendant as being equivalent to directing verdict against it.*

In action against bus company and railroad for death of bus passenger killed in collision between bus and train at crossing, in which the evidence overwhelmingly showed negligence of bus driver, direction of verdict for bus company *held* reversible errror as to railroad, as meaning that railroad alone was at fault.

---

*Headnotes 1. Railroads, 33 Cyc., p., 1104; 2. Carriers, 10 C. J., section 1383; 3. Trial, 38 Cyc., p. 1480; 4. Roads, 33 Cyc., p. 1015; Negligence, 29 Cyc., pp. 547, 548; 5. Trial, 38 Cyc., p. 1581; 6. Appeal and Error, 4 C. J., section 3008 (1926 Anno.).

APPEAL from circuit court of Forrest county.
HON. R. S. HALL, Judge.

Suit by Mrs. G. Carlson against the Gulf & Ship Island Railroad Company and another. Judgment for plaintiff against named defendant, and named defendant appeals. Reversed and remanded.

Appellee, Mrs. G. Carlson, sued appellant Gulf & Ship Island Railroad Company and Lott and Steele, owners of an auto bus line (who for convenience will be referred to as the bus company), as·joint tort-feasors producing the death of her husband, for damages for such death. After the close of the evidence the court directed a ver·· dict for the bus company, and submitted the case to the jury as against appellant upon the evidence and instructions. There was a verdict and judgment for appellee for fifteen thousand dollars, from which appellant prosecutes this appeal.

The case as shown by the record is as follows: Appellant's railroad line runs in a northerly direction from Gulfport to Jackson in this state, passing through Hattiesburg. The defendants Lott and Steele operated an auto bus line for the carriage of passengers from Gulf· port to Hattiesburg. On the 9th of February, 1924, ap-

pellee's husband was a passenger on their bus line from Gulfport to Hattiesburg. At Landon, about four miles north of Gulfport, while the bus was attempting to cross appellant's line of railroad on the public highway from east to west, there was a collision between the bus and appellant's passenger train No. 1 going south, which resulted in the death of appellee's husband. The bus contained three passengers besides appellee's husband. Appellee in her declaration charged that the collision and injury were caused by the joint tort of appellant and the bus company; that appellant's negligence consisted in failing to have its train under control, in running at an excessive rate of speed, and in failing to give the statutory signals on approaching the highway crossing where the collision took place. It charged defendant bus company with negligence in failing to keep proper lookout for the approaching train, and negligently driving the bus on the railroad track in front of a fast approaching train. Appellant pleaded the general issue as did the bus company, and in addition the latter pleaded, specially charging that the view of the train as it approached the crossing was obstructed by a growth of bushes by the side of the right of way of appellant's track. The bus was being driven by Earl Waddell for the bus company. The other passengers than appellee's husband were Steve Grantham, S. Hamburger, and Ella Grace, a negro woman. About four miles north of Gulfport there is a flag stop on appellant's railroad called Landon. From Gulfport up to this place the public highway runs north on the east side of appellant's railroad track. At, Landon for some distance the highway parallels the railroad track about fifty or sixty feet away on the east side, and turns at right angles and crosses the railroad track to the west and continues north for some distance on the west side. It was at this crossing the collision between appellant's train and the bus took place. The driver of the bus was not called as a witness. Grantham, one of the passengers on the bus, testified that the train could

have been seen up the railroad track before the bus reached the track, but he was not looking; that he did not see the train until the bus was on the track and the train was right up at the bus; that at a point about thirty-five feet away from the railroad track there was a clear view, and nothing in the way of seeing the train as it approached; that he never heard the whistle blow or the bell ringing at any time before the collision, and that he knew that after he saw the approaching train the bell did not ring nor did the whistle blow; that the bus was going something like ten to twelve miles an hour, and the train from twenty-five to thirty miles an hour.

Hamburger, another passenger, testified that he did not hear the train approaching until the bus was on the track, when he looked up and the train was about twenty-five feet from the bus, and the impact was almost immediately thereafter; that he holloed to the driver warning him of the approaching train, but it was too late for the driver to act. He testified positively that when he looked up and saw the train the bell was not ringing nor was the whistle blowing.

Appellant's engineer operating the engine pulling the train testified that he blew the regular road crossing signal for this crossing when a half mile away, that he then started the bell to ringing with an automatic air ringer with which it was equipped, and that it continued to ring until after the collision occurred and the train stopped; that the train was running about twenty-five miles an hour; that he was in his usual place on the west side of the cab keeping a lookout ahead; that the speed he was going was the usual speed of his train at that point; that he saw no object or obstruction at or near the highway crossing; that he saw nothing approaching the track until he was right at the crossing, when his fireman called his attention to the approaching bus, when he applied the air in emergency, and stopped his train in a distance just a little more than its length.

The fireman testified that he was on the east side of the cab at his usual place; that he saw the bus approaching the crossing when the train was about one hundred feet away; that the bus was moving at a slow rate of speed; that he thought it was going to stop for the train to pass, but that it failed to slow down but rather seemed to move faster; and he called to the engineer to look out; and then it was the bus moved up on the track in front of the train and was struck.

Two boys, Robillard and Boznick, testified that they they were driving a wagon drawn by a mule on their way to the store at Landon, and, on approaching this crossing from the east side, they heard the train coming and saw it and stopped in the curve where the road turns at right angles to cross the railroad track and there awaited the passing of the train; that while so waiting the bus came up, passed around them and proceeded on to the crossing and was struck by the train.

The postmaster at Landon testified he was about seventy-five or one hundred feet north of the crossing at the mail crane; that he had put the mail sack on the crane and was awaiting the passing of the train to pick up the Landon mail that would be thrown off by the mail clerk on this train; that when the train passed him before reaching the crossing it was making considerable noise, but he remembered distinctly that the bell was ringing.

The evidence showed that the train was running from twenty-five to thirty miles an hour, while the bus after it turned west and while approaching the crossing was going at a speed of something like ten to twelve miles an hour, therefore the train was going about three times as fast as the bus; that at the point where the bus turned at right angles to go west across the railroad track it was about fifty feet from the track. Taking into consideration the speed of the train and the speed of the bus when the latter turned the angle to go west fifty feet from the railroad track the train could not have been more than one hundred fifty feet from the crossing, and

at this angle the approaching train could have been seen when more than one hundred fifty feet from the crossing.

*B. E. Eaton* and *T. J. Wills,* for appellant.

*J. W. Cassedy, Currie & Currie* and *Green, Green & Potter,* for appellee.

Briefs in this case not available to the reporter.

Argued orally by *T. J. Wills,* for appellant, and *Chalmers Potter,* for appellee.

ANDERSON, J., delivered the opinion of the court.

(After stating the facts as above). At the conclusion of the evidence the court, at the request of the defendant bus company, directed a verdict in its favor and declined appellant's request for a directed verdict. The action of the court in directing a verdict for the bus company and refusing to direct a verdict for appellant is assigned as error.

We will consider first the question whether the court erred in refusing to direct a verdict for appellant. We are of opinion that there was sufficient evidence to go to the jury on the proposition that appellant was violating section 4045, Code of 1906, and section 6669, Hemingway's Code, at the time of the collision, and that the collision might not have taken place except for the violation of said statute by appellant. That statute provides in substance that every locomotive engine shall be provided with a bell of at least thirty pounds weight, or a steam whistle which can be heard distinctly at a distance of three hundred yards, and the railroad company shall cause the bell to be rung or the whistle to be blown at a distance of at least three hundred yards from all highway crossings, and the bell shall be kept ringing or

the whistle kept blowing until the engine has stopped or crossed such crossings.

Appellant argues that there was nothing in the evidence to show positively that this statute was violated; that the testimony of the witnesses on the subject was negative; that their evidence went no further than to show that they heard neither bell nor whistle. We find that appellant is mistaken. The witnesses Grantham and Hamburger both testified that they were positive that when they first saw the approaching train it was only a very short distance from them, and neither the bell was ringing nor the whistle blowing. We think it was a question for the jury whether that was true or not, and, furthermore, whether, if the statute was violated, such violation contributed proximately to the injury complained of.

The next question is whether the court erred in directing a verdict for the bus company, and, if it did err, whether such error was harmful to appellant. Appellee's attorneys scarcely undertake to justify the action of the court in directing a verdict for the bus company. Under the undisputed facts of the case to do so was palpable error. The driver of the bus either drove upon the crossing without looking or listening for an approaching train, or he saw the approaching train and decided that he could clear the crossing before the train reached it. In either event he was guilty of gross negligence.

Appellee's husband was without any fault whatever. His life was taken as the result of the collision between appellant's train and the bus. Such a catastrophe could not happen without the fault of some one. The evidence shows without conflict that the collision and injury resulted either from the joint negligence of appellant and the bus company, or the negligence of one or the other. If they were joint tort-feasors they were both jointly and severally liable for the injury. One of appellee's attorneys in the opening argument to the jury, in comment-

ing on the question as to whether appellant or the bus company was liable for the injury, used this language:

"Gentlemen of the jury, it is undisputed that the deceased was without fault at the time of the collision, and that somebody is responsible to his widow in damages for his death. His honor on the bench has told you that the bus company, the defendants, Lott and Steele, are not liable, and the only other defendant who could be liable is the Gulf & Ship Island Railroad."

And in the closing argument, another one of appellee's attorneys, in discussing the same question, used this language:

"Gentlemen, the court has instructed you that the bus company is not liable in this case. It is conceded that one or the other of the defendants is liable, and should pay full damages for the death of plaintiff's husband. It is your duty to return a verdict against the railroad company in this case in an amount sufficient to fully compensate the plaintiff for the loss that she sustained."

In each instance the argument was objected to by appellant and its objection overruled, to which action of the court appellant took a special bill of exceptions, embodying therein the language of counsel above set out and the rulings of the court thereon. This is not a case where the directed verdict was in favor of a defendant joint tort-feasor who was without fault. On the other hand, it was in favor of one whose negligence proximately contributed to the injury as was overwhelmingly shown by the evidence. Appellee's attorneys were fully justified by the action of the court in directing a verdict for the bus company in making the argument to the jury above set out.

In view of the fact that appellee's husband was without fault, and that the fault of the bus company could not be charged to him, and that the collision and injury was the result of either the joint tort of appellant and the bus company, or of the one or the other alone, the action of the court in directing a verdict for the bus company

simply meant that the bus company was without fault and the appellant alone was at fault. In other words, it meant that appellant alone was liable for the injury. If the court had expressly directed the jury to return a verdict against appellant on the question of liability it could not have been more harmful than what was done. The action of the court was tantamount to that, and the jury could not have understood it otherwise. Certainly under the evidence in this case no such an instruction was proper. On the contrary there was ample evidence to justify a verdict exonerating appellant from any fault whatever.

In the case of *Capital Traction Co.* v. *Vawter,* 37 App. D. C. 29, Ann. Cas. 1912D, 1059, it was held that, at the close of the evidence in a case against joint tort-feasors, the court may direct a verdict in favor of one of the defendants. But, nevertheless, before so doing it ought to clearly appear that there is no evidence tending to show liability on the part of the party so dismissed, and that it should also be clearly apparent that no injury will thereby be inflicted upon the remaining codefendant. Appellee, to sustain the action of the court in this respect, relies principally on *I. C. R. R. Co.* v. *Clarke,* 85 Miss. 691, 38 So. 97; *Nelson* v. *I. C. R. R. Co.,* 98 Miss. 295, 53 So. 619, 31 L. R. A. (N. S.) 689; *St. L. & S. F. R. R. Co.* v. *Sanderson,* 99 Miss. 148, 54 So. 885, 46 L. R. A. (N. S.) 352; *Y. & M. V. R. R. Co.* v. *Hardie,* 100 Miss. 132, 55 So. 42, 967, 34 L. R. A. (N. S.) 740, 742, Ann. Cas. 1914A, 323. We are of opinion that none of those cases is in point. They simply hold that because under the law joint tortfeasors are both jointly and severally liable, the discharge of one either by the action of the court or verdict of the jury does not discharge the other. It is not that appellant was released from liability by the directed verdict in favor of the bus company. No such contention as that is made by appellant, and, if it were, there would be no ground for it. The complaint is that the action of the court in erroneously directing a verdict

for the bus company under the circumstances rendered such action tantamount to directing a verdict against appellant, the joint tort-feasor, on the question of liability. If the court had been justified in discharging the bus company, of course its action would have been harmless to appellant. And it is true that the bus company's discharge under the circumstances operates as a complete acquittal of it, of the injury complained of, in default of appeal by appellee from the action of the court in that respect. But when the case goes back and is tried again no harm can result to appellant from that action. There will be no occasion for the court to again repeat the error by directing a verdict for the bus company, because that has already been done and the judgment in its favor must stand. Another trial therefore can and should proceed without any harm to appellant growing out of such erroneous action of the court on the former trial. We hold that the error of the court in directing a verdict for the bus company, which was accentuated by the argument of appellee's attorneys, was harmful to appellant.

*Reversed and remanded.*