HEAFNER *et al. v.* COLUMBUS & G. R. Co.

(Division B. June 5, 1939.)

[190 So. 1. No. 33745.]

O. L. Kimbrough, of Greenwood, for appellants.

Denman & Everett, of Greenwood, for appellee.

Argued orally by **O. L. Kimbrough**, for appellants, and by **Richard Denman** for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

The appellants, plaintiffs in the court below, brought suit for the wrongful death of Annie Maude Heafner, about sixteen years of age, killed when the truck in which she was riding with another lady, Miss Sanders, and driven by a man named Harrison, collided on February

22, 1934, with a train on the Columbus & Greenville Railroad at a crossing in the village of McCarley. At the time of the collision Harrison, Miss Heafner and Miss Sanders were returning to Greenwood, Mississippi, from Winona, Mississippi. Both young ladies were employed by Harrison as helpers in distributing samples of a baking powder called Clabber Girl Baking Powder, manufactured by Hulman & Company, Inc., of Terre Haute, Indiana, at the homes of persons in the territory where they were operating, the truck being used in connection with the business of Hulman & Company, Inc. On the date in question they had been to Winona for this purpose, and returning to Greenwood, were struck by the train while crossing the tracks at McCarley, as stated. At that point the railroad runs approximately east and west, while the highway runs north and south at that particular point, although its general direction is east and west.

There was a dispute in the evidence as to whether or not the train had given the signals required by statute in approaching a highway crossing, by blowing the whistle or ringing the bell continuously for 900 feet prior to reaching the crossing, and until the engine had passed the crossing. The driver of the truck, Harrison, was not produced as a witness in the case, but Miss Sanders, who was riding in the truck, testified that as they approached the scene of the accident she heard neither the ringing of the bell nor the blowing of the whistle of the train, although her hearing is normal. A number of people in McCarley saw the accident, and testified in regard thereto, a number testifying that the bell was not ringing and the whistle was not blowing—that the whistle only blew at the mile board, about a mile away, and two short blasts were blown about the moment of the collision, in answer to a signal from a mail service man, who had carried the mail from the post office at McCarley to the depot, to be taken up by the train.

The testimony of the crew operating the train was to

the effect that the signals were all given, that the whistle had blown for the crossing, and that the bell had been rung continuously for more than 900 feet before reaching the crossing, and was ringing at the time of the accident. Some other witnesses testified to the same effect. In other words, the testimony was conflicting as to whether or not the bell was rung and the whistle blown, as required by the statute. Code 1930, section 6125.

It was also shown that the "Mississippi Law Stop" sign was placed about 24 feet from the railroad track, instead of 50 feet; that the lettering on the sign was dim and difficult to read; and there is a dispute as to whether the lettering on the sign could be deciphered at a sufficient distance to serve as a warning. Miss Sanders testified that she did not see the train until they were within a few feet of it, and heard no signals; that at about the moment she saw the train Harrison put his brakes on and turned the truck to the left, but not in time to avoid a collision.

Suit was filed against both the Columbus & Greenville Railroad Company and the Hulman Company, Inc.; a settlement being reached between Hulman & Company, Inc., and the plaintiffs prior to trial of the case, non-suit was taken as to that company, and the trial proceeded against the Columbus & Greenville Railroad Company alone, the instruments evidencing the settlement with Hulman Company, Inc., being introduced in connection therewith.

There was a difference between the statements made by some of the witnesss for the plaintiffs prior to the trial, and their testimony given on the trial, tending to show that they were not positive as to the absence of signals. Among these contradictory statements is that of the lady who was riding in the truck at the time of the collision, who was then Miss Sanders, but who later married, and at the time of the trial was Mrs. G. B. Leimgruebler.

On the examination of witnesses, Mr. Frank Mortimer,

who was near the crossing when the collision occurred, testified for the plaintiff that the bell was not rung nor the whistle blown 900 feet before the train reached the crossing, and that the whistle was only blown, as above stated, in answer to the signal from the mail carrier; on cross-examination by attorneys for the defendant, as to statements theretofore made, with a view to showing uncertainty on his part in that regard, there was at least an indication that he had not been positive about it prior to the giving of his testimony. After considerable examination, he was asked whether, if the signals had been given, under the circumstances testified about he would have heard them. This was objected to, which objection was overruled on the ground that it was a mere opinion.

A number of the instructions given defendant were complained of, of which we shall notice only the following: Instruction No. 7 reads as follows: ''The Court instructs the jury for the defendant that, if they believe from the evidence that the truck driver saw, or by the exercise of ordinary care and caution could have seen or heard the approaching train which struck his automobile, in time to have stopped his car and avoided the accident, then the jury will find for the defendant.'' This instruction is fatally erroneous. The plaintiffs were entitled to recover from the railroad company if it was negligent in regard to the signals when approaching the crossing, although the facts embodied in this instruction might be true. They were entitled to recover against both the railroad company and the Hulman Company, Inc., if both were negligent; and the negligence of the driver of the Hulman Company, Inc., truck was not a bar to recovery against the railroad company in the event that it, too, had been negligent. The instruction omitted one qualification necessary to be embraced in it, that such negligence by the driver of the truck was the sole cause of the death or injury of the decedent. For this error the judgment of the court below must be reversed.

The court also gave instruction No. 8, which provides: "The Court instructs the jury for the defendant that the statute law of Mississippi does not require the defendant to erect in plain view the cross board railroad sign warning travelers on the highway of the railroad crossing, and if you believe from the evidence that such cross board warning sign was there in full view of the truck driver, that regardless of the Mississippi Law Stop sign the driver of the truck knew or should have known that he was approaching a railroad crossing from other railroad signs at said crossing, and gave no heed to the said warnings but proceeded across said tracks and was negligent in so doing and such negligence was the sole contributing proximate cause of the injury to plaintiff's decedent, then you shall find for the defendant Railway Company." This instruction should not have been given, because the Legislature, having prescribed a particular sign to warn travelers of a railroad crossing, even though the old sign formerly required may not have been removed, the sign required by law should be placed in accordance with the statute; these being the signs required to warn travelers approaching the crossing. All persons are charged with knowledge of the law, but not necessarily with knowledge of the meaning of signs not required to be made by law, unless they were familiar with the location of the crossing. The driver, Mr. Harrison, was not shown to have been a resident of Mississippi, nor was he shown to have been familiar with signs formerly erected by the railroad company. However, this alone would not reverse the case—but the instruction should not be given on a new trial.

The defendant also was given an instruction reading: "The Court instructs the jury for the defendant that there can be no recovery against the defendant, Columbus & Greenville Railway Company, on account of any alleged failure of the said defendant to equip its locomotive with such a bell and whistle as the law requires." Under the peculiar facts of this case, this instruction was

calculated to confuse the jury, because one of the principle issues to be decided by it was whether or not the bell had been rung continuously for a distance of 900 feet before reaching the crossing and until the locomotive passed it. The evidence failed to disclose whether or not the bell on the train was such as the statute required, and the declaration was silent in the matter. However, we do not reverse for this error alone.

We are also of the opinion that the court should have permitted the witness, Mortimer, to answer the question as to whether or not he would have heard the bell, had it been ringing. This is not a mere matter of opinion, for the reason that the sense of hearing varies in different individuals. Whereas, the sound of the ringing bell might be sufficient to carry for the distance required by the statute, some persons might not be able to hear it. Every person knows, and is the best judge of, his capacity to hear; and it is competent for the plaintiff to develop the fact that he would have heard it, had it been ringing. This is different from a mere opinion as to what would or would not be done under certain circumstances. Had it been shown that his capacity for hearing was normal, or that of the ordinary person, then it might be that the jury should have been left to decide in that regard. However, this question and answer are admissible under the circumstances existing in this case.

In Albert v. Doullut & Ewin, Inc., et al., 180 Miss. 626, 178 So. 312, 313, it is said: ''There was direct evidence on behalf of appellees that a warning was given, while on behalf of appellant several witnesses testified that they were from 20 to 100 feet of where the tree was being felled and if any warning was given by the sawyers they did not hear it, and if it had been given they would have heard it. Appellees contend that this evidence was negative and for that reason not sufficient to make an issue for the jury, as against the positive testimony that the warning was given. Testimony that a fact did not occur, given by witnesses so situated that in the ordinary

course of events they would have heard or seen the fact had it occurred, is sufficient to warrant a jury in finding that the fact did not occur. 1 Wigmore on Evidence (2 Ed.), sec. 664; 23 C. J. 40; Yazoo & M. V. R. Co. v. Lucken, 137 Miss. 572, 102 So. 393; Gulf & S. I. R. Co. v. Carlson, 137 Miss. 613, 102 So. 168; Grantham v. Gulf & S. I. R. Co., 138 Miss. 360, 103 So. 131; Gulf M. & N. R. Co. v. Hudson, 142 Miss. 542, 107 So. 369; Columbus & G. R. Co. v. Lee, 149 Miss. 543, 115 So. 782. We are of the opinion that it was an issue for the jury as to whether or not the warning was given.''

Since other errors complained of may not occur on another trial, we shall not comment thereon. For the errors indicated the judgment must be reversed and the cause remanded for a new trial.

Reversed and remanded.