**R. G. LE TOURNEAU, Inc., Appellant,**

v.

**Emile Herbert SIMONEAUX et al.,
Appellees.**

**No. 15633.**

United States Court of Appeals
Fifth Circuit.

Feb. 13, 1956.

Billy H. Quin, W. J. Vollor, Vicksburg, Miss., Brunini, Everett, Grantham & Quin, Vicksburg, Miss., for appellant.

Landman Teller, M. E. Ward, Vicksburg, Miss., Richard C. Cadwallader, Baton Rouge, La., R. L. Dent, Vicksburg, Miss., Dent, Ward & Martin, Vicksburg, Miss., Joseph H. Wright, Vice-President and General Counsel, Chicago, Ill., John W. Freels, General Solicitor, Chicago, Ill., J. L. Byrd, Dist. Atty., Jackson, Miss., of counsel, for Illinois Cent. R. Co.

Before HUTCHESON, Chief Judge, and JONES and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

Brought against the Illinois Central Railroad Company and R. G. LeTourneau, Inc., the suit was for damages suffered by plaintiff, a brakeman in the employ of the railroad company, when the engine, in the cab of which he was working, collided with an earth moving machine belonging to LeTourneau, the other defendant, at a private crossing constructed and maintained by LeTourneau with the permission and consent of the railroad company.

Alleging many claims of negligence,[1] the complaint concluded with the allegation that his injuries and losses proximately resulted from the combined and concurring negligence of the two defendants, or from the negligence on the part of the railroad alone, or on the part of LeTourneau alone. It also alleged that the railroad company permitted LeTourneau to construct the crossing pursuant to an oral or written agreement, in which they recognized that the crossing was extremely hazardous, and in and by the agreement LeTourneau attempted to assume responsibility.

Both defendants moved to have these allegations about the contract stricken from the complaint. LeTourneau, admitting that the plaintiff was injured as claimed, denied that it was jointly or severally negligent, and alleged that plaintiff's injuries resulted from negligence on the part of the railroad alone. The railroad company, admitting that it had by written agreement permitted LeTourneau to construct a private crossing, denied that the crossing was hazardous, denied plaintiff's allegations that it was negligent, and alleged that the injuries received by plaintiff were the direct and proximate result of the gross negligence of LeTourneau.

The district judge, with the consent of the parties, struck from the complaint the matter objected to by the defendants in their motions to strike, and it was agreed that in lieu thereof Par. 6, of the complaint should read as follows:

"That the private crossing in question was extremely hazardous, and the fact of the danger there existing was recognized and known by both defendants, or, in the exercise of due care, should have been so recognized and known."

---

1. Among them: failure to provide the crossing with proper warning signals; failure to provide a watchman; failure to cut down the embankment to permit the private crossing to be properly observed; failure to instruct the engineer and train crew of the freight train to expect to find earth moving machines crossing the track at the private crossing; failure to require those in charge of the north bound train to reduce speed and proceed with caution, despite the fact that for many months after the crossing was built the company had issued daily train orders up until a few months prior to the accident; failure of the defendant LeTourneau to require the operator of its earth moving machine to stop before crossing; its placing in charge of said machine a young and improperly trained boy, and his negligence in failing to keep a proper lookout for the train and to heed the warning whistle and the ringing bell, and in causing and permitting the machine to enter on and foul the track, abandoning the machine and negligently permitting or causing the collision, and failing to exercise due care and the last opportunity or chance to avoid the accident.

The case coming on for trial was fully tried to a jury, and there was a verdict: "We, the jury, find for the plaintiff in the sum of $35,000 against the defendant, LeTourneau, Inc., and for the defendant, Illinois Central Railroad Company"; and a judgment "in favor of plaintiff and against the defendant, LeTourneau, for $35,000, and that the defendant, Illinois Central Railroad Company, is discharged to go hence without day."

Defendant LeTourneau moved the court to set aside the verdict of the jury and the judgment and to grant a new trial, and, this motion denied, it gave notice of appeal "from the final judgment entered against it" and executed a supersedeas bond in favor of plaintiff. Neither plaintiff nor LeTourneau, however, appealed from the judgment discharging the defendant railroad company.

Here, insisting that its appeal has brought the whole matter up so that, if for any of the errors assigned by it plaintiff's judgment against it is reversed, the whole case must be sent back for trial anew as to both defendants, appellant urges upon us that, under the Mississippi Joint Tort Feasor Act[2] and the authorities cited in its brief,[3] if, by reason of any error occurring in the trial, the railroad company escaped a verdict of guilty as a joint tort feasor, appellant is entitled to have the whole case reversed and retried anew in order to protect its rights under the act.

The railroad company thus opposes this contention:

"Prior to the enactment of the Tort Feasor Act, Sec. 335.5 of the Mississippi Code of 1942, enacted a few months before this accident, there would have been no question but what the Railroad could not have been affected by this appeal. See Sikes v. Thomas (1942) 192 Miss. 647, 7 So.2d 527; Crenshaw Bros. Produce Co. v. Harper, 142 Fla. 27, 194 So. 353. It is our opinion that this statute does not change the established rules heretofore followed by the Mississippi Supreme Court."

In addition, it cites and quotes from St. Louis & S. F. R. Co. v. Sanderson, 99 Miss. 148, 54 So. 885, 46 L.R.A.,N.S., 352; Rawlings v. Inglebritzen, 211 Miss. 760, 52 So.2d 630; and Doom v. Thompson, Miss., 35 So.2d 535.

Plaintiff-appellee Simoneaux, citing Illinois Central R. Co. v. Clark, 85 Miss. 691, 38 So. 97; Gulf & S. I. R. Co. v. Carlson, 137 Miss. 613, 102 So. 168; and pointing out that LeTourneau was sued as a joint tort feasor and as solely and severally liable, insists: that it is and remains liable to him for the full award; that the judgment against it should be affirmed even though it be concluded that the railroad company should also have been found responsible as a co-defendant; and that unless error prejudicially affecting LeTourneau in respect of plaintiff's claim against it is shown, the judgment must be affirmed, and the litigation brought to an end.

So insisting, he urges upon us: that no prejudicial error as to LeTourneau has been shown; that indeed the record is singularly free of even carping error so far as it is concerned, and that the evidence shows as matter of law that it is liable.

<hr/>

2. As material here, the Act, which became law on April 15, 1952, provides:

"§ 335.5. Contributions between joint tort feasors.—In any action for damages where judgment is rendered against two (2) or more defendants, jointly and severally, as joint tort feasors, the defendants against whom such a judgment is rendered shall share equally the obligation imposed by such judgment, * *.

 *     *     *     *     *     *

"Provided further, that the liability of such defendants against whom such a judgment has been rendered shall be joint and several as to the plaintiff in whose favor such judgment has been rendered." Sec. 335.5, Mississippi Code of 1942.

3. 3 Am.Jur., "Appeal and Error", Sec. 1186; 5 C.J.S., Appeal and Error, § 1920; Miller v. Pennsylvania R. Co., 368 Pa. 507, 84 A.2d 200; Rio Grande, E. P. & S. F. R. Co. v. Guzman, Tex.Civ. App., 214 S.W. 628; Luquire Ins. Co. v. Parker, 241 Ala. 621, 4 So.2d 259; Schartz v. Jaffe, 324 Pa. 324, 188 A. 295.

While the Mississippi Joint Tort Feasor Act, invoked by appellant, is specifically limited in application to an "action for damages where judgment is rendered against two (2) or more defendants, jointly or severally, as joint tort feasors", which is not the case here, and appellant's cases and authorities are not precisely in point, the question it seeks to present is interesting and would have to be decided if we should conclude that any of the matters complained of by appellant present prejudicial error requiring a reversal of the judgment it appeals from.

■ Of the opinion, however, for the reasons hereafter briefly stated, that not one of appellant's eight specifications[4] presents reversible error and that the judgment must be affirmed, it will be unnecessary and inappropriate for us to give consideration to this question. The two specifications most strongly relied on by appellant are the two dealings with the introduction in evidence of a portion of the contract for the construction and maintenance of the private crossing. The other six, except No. 7

which deals with the exclusion of evidence, are concerned with claimed errors in the charge of the court. They may be generally disposed of by saying that most of the matters now complained of were not complained of at all below or were not sufficiently called to the court's attention to give him an opportunity to correct them, if error, and that if any of them could be said to constitute error, it was error of a wholly insubstantial kind without prejudicial effect on the proceedings as a whole, error, in short, occurring in a long hotly contested and carefully conducted trial, in which abstract inerrancy is hardly possible and never essential.[5]

This is particularly true in this case. It comes here on a record consisting of more than 600 pages, with a carefully prepared and detailed charge of more than 50 pages, including nine rather lengthy instructions requested by and given on behalf of the appellant, with no exception to the refusal of any asked by it, no request by it that additional instructions be given. On such a record and such a charge, it is a testimonial at once to the fairness and the skill of the

---

4. "Specifications of Errors."

"1. The Court erred in allowing Emile Simoneaux over the objection of R. G. LeTourneau, Inc. to introduce in evidence a part of a contract entered into between the Illinois Central Railroad Company and R. G. LeTourneau, Inc., dated the 28th day of May, 1951.

"2. The Court erred in its instructions to the jury concerning this contract.

"3. The Court erred in its instruction to the jury in constantly referring to Kenneth Dickenson, the driver of the LeTourneau machine as 'young boy', referring to Kenneth Dickenson as a 'boy' and referring to him as an inexperienced and incompetent driver.

"4. The Court erred in its instructions to the jury with respect to the obligation of R. G. LeTourneau, Inc. to stop the machine, have the operator get off thereof, go to the track, and look and see if a train was coming and with respect to the requirement that two men should operate the machine and that one should get off, go ahead of the machine and flag it and look for trains and the other to operate it.

"5. The Court erred in its instruction to the jury regarding the obligation of the Illinois Central Railroad to blow the whistle and to ring the bell.

"6. The Court erred in its instruction to the jury regarding the obligation of the driver of the LeTourneau machine to use the air brakes.

"7. The Court erred in refusing the Defendant, R. G. LeTourneau, Inc. to introduce evidence concerning the slow orders which had been in existence on this crossing from April 14, 1952 to May 27, 1952.

"8. The Court erred in that its instructions to the jury are confusing and contradictory and did not present the Appellant's theory of the case to the jury."

5. Cf. Maryland Cas. Co. v. Reid, 5 Cir., 76 F.2d 30; Henwood v. Chaney, 8 Cir., 156 F.2d 392; Atlantic Coast Line R. Co. v. Hadlock, 5 Cir., 180 F.2d 105; Williams v. Atlantic Coast Line R. Co., 5 Cir., 190 F.2d 744; Dallas Ry. & Terminal Co. v. Sullivan, 5 Cir., 108 F.2d 581, at page 584.

trial judge that so few claims of error are made in respect to the charge and that these, when viewed in the light of the record as a whole, are wanting in substance and wholly fail to put the judge in error.

There remain only the claims of error (1) in refusing to permit the introduction in evidence of the "slow orders" which were in existence on this crossing from April 14, 1952 to May 27, 1952, and (2) in admitting in evidence a portion of the private contract for the construction of the crossing.

 Of the first, it is sufficient to say that the collision occurred in August, more than two months after the order had been cancelled, and the court correctly excluded the evidence as immaterial because this was so. However, he took particular pains to make it clear to the appellant and the other parties that he was not excluding evidence of custom, orders, or practices prevailing at the time of the occurrence, and in colloquies with counsel and in his instructions to the jury, to which no exceptions were taken, he made it clear that it was for the jury to say, upon all the evidence, whether in its speed or in any other respect, those operating the train were negligent at or before the time of the collision.

As to the introduction in evidence of the small portions of the contract,[6] it is completely clear that it would not, and could not, have had the prejudicial effect appellant claims for it. This is so because there is nothing in the two sentences admitted which states or tends to state that LeTourneau assumed liability and responsibility for injury at the crossing. It is so, too, because in its charge the court fully and carefully stated the purpose and effect of the contract as, and limited it to, furnishing the authority for building the crossing and plainly and fully instructed the jury that, upon the completion of the crossing, both defendants were liable because, and only because, of their negligence with respect to it.

No exception was taken to that part of the court's charge dealing with the contract, and no further instructions were asked in respect thereof. In these circumstances, there is no possible basis for the claim that the introduction of the contract was error, prejudicial or harmless.

No reversible error appearing, the judgment is affirmed.

---

6. These were:

"1. The Railroad Company hereby grants unto Licensee license and permission to construct at its sole cost, risk and expense, grade crossing at the location hereinabove specified."

"2. Licensee agrees to maintain the crossing so long as same remains in place without expense to the railroad company and the use of said crossing shall be restricted to the licensee, licensee's employes and invites only."