**TURNER CONSTRUCTION COMPANY, Defendant, Appellant,**

v.

**John T. HOULIHAN, Plaintiff, Appellee.**

**No. 5122.**

United States Court of Appeals First Circuit.

Heard Nov. 5, 1956.

Decided Jan. 22, 1957.

John Cancian, Boston, Mass., with whom Bingham, Dana & Gould, Boston, Mass., and Lee A. Worrell and Worrell & Hodge, Providence, R. I., were on the brief, for appellant.

Edward I. Friedman, Cranston, R. I., with whom Vincent J. Chisholm, Providence, R. I., and William Schwartz, Pawtucket, R. I., were on the brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

The plaintiff-appellee, John Houlihan, a citizen of Rhode Island, was employed by W. J. Halloran Co. as an "oiler" and "apprentice engineer" to work on a portable crane under the direct supervision of the crane operator. On or about Friday, March 20, 1953, the defendant-appellant, Turner Construction Company, a New York corporation, arranged with Houlihan's employer for the use of a crane to hoist ready-mixed cement from the ground to the roof of a building which, as the general contractor, it was constructing for the St. Regis Paper Company in East Providence, Rhode Island. Houlihan and the crane operator on orders from Halloran's dispatcher moved their crane on the above day to the building site, reported to Turner's supervisor on the job who described the work to be done, and then set the crane up in readiness to begin work on the following Monday. When they reported for work on Monday morning, March 23, they found that it was necessary to have a man posted on the roof of the building to give signals to the "blind" crane operator below so that he could maneuver the bucket of wet cement over a hopper on the roof into which it was to be emptied. It was Turner's duty as the general contractor on whose order the crane work was being done to provide a signal man, called a "tag-man," and applicable union rules required that the "tag-man" be a member of the iron-workers union. Turner's supervisor "borrowed" an iron-worker to serve as "tag-man" from White Plains Iron Works, Inc., a New York corporation and one of Turner's sub-contractors on the project, and the work of hoisting cement to the roof began.

A few successful hoists were accomplished and a loaded bucket had been raised to the roof and positioned over the hopper, when the "tag-man" gave a signal which the crane operator interpreted to mean that the bucket had been emptied and was ready to be returned to the ground for another load. He, therefore, swung the bucket free of the structure and started to lower it, but its unexpect-

ed weight caused the bucket to fall to the ground out of control and strike the plaintiff who was at his work keeping watch of the crane to see that it did not capsize.

The loaded bucket weighed two tons and, striking the plaintiff on the shoulder, it knocked him down and pinned him beneath it, causing him very serious injuries. In addition to injuries to his shoulder, which though painful have not proved permanently crippling, he suffered a compound comminuted fracture of the right leg. This injury was not only exceedingly painful but was also so severe that the plaintiff was confined in a hospital continuously for some fifteen months, for most of that time either with his leg in traction or else encased in a spica cast extending from his toes to above his waist.

His enforced immobility in the hospital caused kidney stones to form which had to be removed surgically, and his leg is permanently deformed and essentially useless. It is substantially shorter than the other, it cannot be bent, the circulation in it is greatly impaired, and the thigh bone knit so seriously out of alignment and the leg muscles are so badly damaged, that the plaintiff cannot bear any weight upon it without a metal brace extending from his groin to the heel of his shoe. Although he has undergone therapy, he can stand and walk only with the aid of crutches and there is little prospect of any substantial improvement in the condition of his leg.

The plaintiff brought separate actions of tort in the court below under its diversity jurisdiction against both Turner Construction Company and White Plains Iron Works, Inc., alleging in each action that his injuries were caused by the negligence of the "tag-man" for whose lack of due care the defendant was responsible under the doctrine of *respondeat superior*. The actions were tried together by jury, and at the trial the principal issue, in addition to the issues of causal negligence of the "tag-man," and the extent of the plaintiff's damages, was whether the "tag-man" at the time of the accident was acting as the agent or servant of the defendant Turner Construction Company or of the defendant White Plains Iron Works, Inc. The jury found in response to special questions submitted by the court that the "tag-man" at the time the plaintiff sustained his injuries was employed by the Turner Construction Company and that the "tag-man's" negligence was the proximate cause of the plaintiff's injuries. It, therefore, in accordance with its instructions, returned a verdict for the defendant in the plaintiff's action against White Plains Iron Works, Inc., and a verdict for the plaintiff in his action against Turner Construction Company. And in the latter action it assessed the plaintiff's damages at $150,000. Turner moved for a new trial on the ground of several alleged errors in rulings made by the court at the trial and errors in the charge to the jury, and also on the ground that the verdict was so excessive that it must have been reached "under the influence of passion and prejudice." The District Court denied the motion in its entirety and entered judgment for the plaintiff on the verdict. Turner Construction Company thereupon took this appeal.

The appellant makes three contentions on its appeal. It says that the court below erred in its instructions to the jury on the issue of damages, that it erred in refusing to set the verdict aside as excessive, and that it erred in refusing to submit to the jury the issue of whether the plaintiff at the time he was injured was acting as an employee of defendant, which if found to be so, would, it is asserted, prevent the plaintiff from recovering because in that event his injuries would have been caused by the negligence of a fellow servant. We find no merit in any of these contentions. We shall consider them in the order stated above.

There can be no doubt whatever that the plaintiff was seriously, painfully and permanently injured. He was 39 years old at the time of his injury, on the evidence in the record he had always worked at heavy outdoor labor, and there can

be no question that his injuries are so severe that he will never be able to engage in work of that kind again. His medical expert testified on direct examination that he had some limitation of motion in his shoulder and that he had total loss of use of his leg. The medical expert also said that the plaintiff might have to have his leg amputated because of the deficiency of circulation in it, that he apparently would have to wear a brace on it for a long time, and that probably he never would be able to walk without a brace. He said that in his opinion the plaintiff at present was "permanently, totally disabled" from doing the kind of work he had done before, and that, although he did not know what changes there might be in the foreseeable future, judging by the plaintiff's slow rate of progress toward recovery, he is "going to be in the same condition he is now."

On cross-examination the medical expert said that the plaintiff could never do any work that required walking or standing, but, considering the "man as a whole," there "is always a possibility" that he might be able to work at a bench with his hands, such as assembly work in the local jewelry trade, but that he "certainly couldn't handle" work requiring any agility.

On the basis of this testimony the court in its instructions to the jury treated the case as one in which there was no evidence that the plaintiff would ever again be able to engage in any gainful employment.

It said:

"If you are satisfied that the plaintiff's injuries are permanent and that his earning capacity has been permanently impaired as a result of his injuries, then the measure of his damages for the loss of his earnings in the future, as distinguished from earnings in the past, is the present value of the amount which you determine he would have earned from this date forward to the end of his life expectancy."

Then having given instructions with respect to determining the plaintiff's life expectancy, the court said:

"Having fixed the plaintiff's reasonable life expectancy, then you will determine what you believe the evidence has satisfied you to be the weekly expected loss of earnings of the plaintiff from his occupations, the steadiness or unsteadiness of the employment in those occupations, and the number of years in the future which you believe he could reasonably be expected to follow those occupations if he had not been injured."

That is to say, the court did not tell the jury that in assessing damages for loss of future earnings it could make any deduction for whatever amount the jury felt the plaintiff might be able to earn at some less strenuous type of work than that in which he had engaged in the past.

Counsel for the defendant at the close of the charge and before the jury retired told the court that his only "suggestion" was that the charge did not cover the possibility that the plaintiff by retraining himself might find some kind of gainful employment in the future, which, should he be able to do so, ought to be considered by the jury in reduction of the plaintiff's damages for loss of future earnings. The court said that it did not so charge the jury for the reason that there was no evidence to support such an instruction. After further colloquy on the point, counsel for the defendant made specific objections to other aspects of the charge and the jury retired. Counsel for the defendant repeated his above "suggestion" of error in the charge as one of the grounds for his motion for a new trial, and the court in its opinion on the motion reasserted its view that the evidence did not warrant instruction on the possibility of rehabilitation and reemployment by the plaintiff.

■ It is certainly open to serious question whether the remarks made by

counsel for the defendant to the court after the charge and before the jury retired constituted an objection to the charge and a distinct statement of the matter to which he objected and the grounds for his objection as required by Rule 51, Fed.Rules Civ.Proc. 28 U.S.C.A., quoted in the margin.[1] Furthermore, the evidence that the plaintiff in the future could by rehabilitating himself find gainful local employment within his limited physical capacity is sketchy, to say the least. We do not, necessarily, disagree with the trial court's conclusion that the evidence that there "is always a possibility" that in the future the plaintiff might find suitable local employment, coupled with whatever indications to that effect the jury might find from observing the plaintiff in court and on the stand, was at the most a mere scintilla, and insufficient to warrant the instruction "suggested." But, resolving that doubt in the defendant's favor, it seems clear that the "objection" to the charge, assuming that its counsel's "suggestion" can be treated as such, is not enough to preserve its rights in the absence of a written request for an instruction on the point made at the close of the evidence in accordance with Rule 51.

■■ The first sentence of Rule 51 permits, but does not require, the filing of requests for instructions. If none are filed, the court must nevertheless charge the jury on the broad general fundamental rules of law applicable to the principal issues of fact in the case. And, if the court fails fully to charge on the principal issues involved, or charges thereon erroneously, an objection taken as required by the next to the last sentence of the Rule will preserve the objecting party's rights. If, however, counsel want the jury instructed specifically on particular matters, requests for such instructions must be filed. And if such requests are applicable to the case developed by the evidence and have not been given or covered in other instructions, they should be granted when filed by counsel in accordance with the requirements of the Rule. In short, in the absence of a timely request for detailed instructions, counsel must rest content with an accurate general statement of the basic principles of law applicable to the case. If specific instructions on particular matters are wanted they must be timely requested, and a request for detailed instructions made after the charge has been given comes too late to comply with the specific provision of the Rule. The reason for this requirement of the Rule was well stated years ago in City of Chicago v. LeMoyne, 7 Cir., 1902, 119 F. 662, 669, wherein it is said:

"Instructions should be presented to the court before the charge to the jury. This is not only due to the court, but is owing also to the rights of the parties litigant, and is in the public interest. The office of such request is to call the attention of the court to propositions of law supposed to affect the cause, that deliberation may be had thereon, and, if they be approved, incorporated in the charge of the court. It is unfair after the charge is delivered to press upon the court a whirlwind of requests to charge, possibly artfully contrived to entrap the court, and to require decision upon them without time for reflection."

■ By way of elaboration we would emphasize that belated requests to charge in detail on specific matters are unfair

1. "Rule 51. *Instructions to Jury: Objection.* At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of hearing of the jury."

to the opposing party, because counsel for the latter cannot adequately argue his client's case without foreknowledge of the specific legal principles upon which his opponent relies and foreknowledge of the court's proposed action upon those principles as required by the second sentence of the Rule. In general see Manhattan Life Ins. Co. v. Francisco, 1873, 17 Wall. 672, 679, 21 L.Ed. 698; Western & Atlantic R. R. v. Hughes, 1929, 278 U.S. 496, 499, 49 S.Ct. 231, 73 L.Ed. 473.

Had the question of the plaintiff's ability to rehabilitate himself and to find local employment within his capacities as a handicapped person been developed by the evidence introduced at the trial into a major issue in the case, perhaps the court, even in the absence of a specific request, ought to have charged the jury along the lines "suggested" by counsel for the defendant. But, as we have seen, the question of the plaintiff's rehabilitation was only lightly touched upon by one witness who only said that sufficient rehabilitation to work at a bench, as for instance at assembly work in the local jewelry trade, might be possible. Whether this meagre and vague evidence was enough to warrant an instruction, even if seasonably requested, along the lines "suggested" by counsel for the defendant after the charge, is doubtful indeed. But however that may be, the evidence certainly was not enough to impose upon the court the duty to charge on the point in the absence of a specific request for instruction filed in accordance with the Rule.

■ The defendant's other objection to the charge stands in even worse posture in this court than the objection we have already considered since no objection to the alleged omission was made after the charge. To discuss it would be only to repeat what we have said already. We may say, however, that even if properly requested, an instruction that the jury could find that the plaintiff at the time he was injured was acting as an employee of the defendant would hardly be warranted by the evidence. The only reasonable conclusion on the evidence as we read it is that at the time the bucket of cement fell on the plaintiff he was working for the W. J. Halloran Co., an independent contractor engaged by Turner Construction Company by the hour to do the specific job of hoisting 28 yards of wet cement to the roof of the building, and nothing more.

There remains only the question of the amount of the verdict.

■ The District Judge said that had he heard the case without a jury he might have awarded the plaintiff less than $150,000. But he said that he was not convinced that the jury's verdict was prompted by passion, prejudice or sympathy. On the contrary, he said that he thought that there was substantial evidence to support the award and that in his opinion the jury was an intelligent, conscientious and representative body of men and women. Wherefore he concluded that "it would be an unwarranted usurpation by me of the province of the jury if I were to disturb its verdict on the ground that it was excessive."

We find no error of law in the District Court's conclusion. The jury and the court below, having seen and heard the plaintiff and his witnesses, are in a far better position to determine what amount is appropriate to compensate, so far as money can compensate, the plaintiff for his personal injuries, particularly his pain and suffering. See Marshall v. Nugent, 1 Cir., 1955, 222 F.2d 604, 615–616. It would therefore be a rare case in which we would feel justified in reversing a trial court's action on a motion to set aside a jury's award as excessive. And this is not such a case. There can be no doubt that the plaintiff was seriously, painfully and permanently injured, that his future earning capacity is gone or, at the least, seriously impaired, and that his suffering was long and severe and the end of it is not yet in sight. Under these circumstances we cannot say that the verdict, though large, is so exces-

sive that the court below committed error of law in not setting it aside.

The judgment of the District Court will be affirmed.