TURNER CONSTRUCTION COMPANY, Defendant and Third-Party Plaintiff, Appellant,

v.

W. J. HALLORAN STEEL ERECTION CO., Third-Party Defendant, Appellee.

No. 5101.

United States Court of Appeals

First Circuit.

Heard Nov. 5, 1956.

Decided Jan. 22, 1957.

John Cancian, Boston, Mass., with whom Bingham, Dana & Gould, Boston, Mass., and Lee A. Worrell, and Worrell & Hodge, Providence, R. I., were on the brief, for appellant.

Raymond J. McMahon, Jr., Providence, R. I., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This is a companion case to Turner Const. Company v. Houlihan, 1 Cir., 240 F.2d 435. In that case we affirmed a judgment for the plaintiff, Houlihan, in an action for personal injuries alleged to have been caused by Turner's negligence. In this case Turner seeks indemnification from W. J. Halloran Steel Erection

Co., a Rhode Island corporation, for its liability to Houlihan.

This in brief outline is the factual situation. Turner, as the general contractor for the construction of a building in East Providence, Rhode Island, arranged with W. J. Halloran Co. (not the appellee herein, W. J. Halloran Steel Erection Co.) for the services of a portable crane and its crew of two men, one of whom was Houlihan, to hoist wet cement from the ground to the roof of a building it had under construction. Turner procured the services of an iron worker employed by one of its sub-contractors on the project, White Plains Iron Works, Inc., to act as "tag-man" by giving signals from the roof to the crane operator below to guide him in maneuvering the bucket of wet cement over a hopper on the roof into which it was to be emptied. The crane operator, thinking from a signal given by the "tag-man" that a bucket of cement had been emptied when in fact it had not, swung the bucket clear of the building and started to lower it to the ground for another load, but its unanticipated weight caused it to fall to the ground out of control and strike Houlihan causing him serious injuries. Houlihan brought separate tort actions against Turner and White Plains Iron Works, Inc., alleging in each that his injuries were caused by the negligence of the signal man for whose conduct the defendant in each action was said to be responsible. The actions were tried together by a jury which found that Houlihan's injuries were caused by the negligence of the signal man for whose fault Turner but not White Plains was answerable. It accordingly returned a verdict for the defendant in Houlihan's action against White Plains and a verdict for Houlihan in his

action against Turner. The District Court entered judgments on the verdicts and on appeal we affirmed the judgment against Turner.

Houlihan was injured on March 23, 1953. On the next day Turner executed a written change order adding the work of hoisting wet cement to the roof to a contract it had previously made with the W. J. Halloran Steel Erection Co. wherein the latter had agreed to furnish the tools, labor, materials, etc. necessary for the work of installing "deformed reinforcing steel bars and wire mesh" according to stated specifications.[1] After Houlihan brought his actions against Turner and White Plains, Turner brought a third-party action against the appellee herein, Steel Erection, claiming that the latter was liable to it for whatever amount might be adjudged against it in favor of Houlihan. Turner rested its claim upon Article XV of its contract with Steel Erection which in material part provided:

"The subcontractor hereby assumes entire responsibility and liability in and for any and all damage or injury of any kind or nature whatever to all persons, whether employees or otherwise, and to all property growing out of or resulting from the execution of the work provided for in this Contract or occurring in connection therewith, and agrees to indemnify and save harmless, Turner, its agents, servants and employees from and against any and all loss, expense including attorney's fees, damages or injury growing out of or resulting from or occurring in connection with the execution of the Work herein provided."

---

1. The change order was issued by Turner under Articles VII and VIII of its contract with Steel Erection which so far as material provided:

"Article VII. * * * Turner shall reserve the right, from time to time, whether the Work or any part thereof shall or shall not have been completed, to make changes, additions and/or omissions in the Work as he may deem necessary, upon written order to the Subcontractor. No such changes, however, shall be made in the Work, except upon the written order of Turner.

* * * * *

"Article VIII. No alterations except as provided for in Articles VI and VII hereof shall be made in the Work covered by this Contract except upon the written order of Turner * * *."

This third-party action of Turner against Steel Erection was tried with Houlihan's tort actions against Turner and White Plains. At the close of the evidence introduced at that trial the District Court on motion ordered a directed verdict for Steel Erection from which Turner has taken this appeal.

The District Court based its order directing a verdict for Steel Erection on two propositions. It said that there was no evidence whatever from which the jury could find that Houlihan's injury was caused by the negligence of any person in the position of agent or servant of Steel Erection. And it construed the contract as providing indemnity to Turner only for loss or damage to it occasioned by the negligence of Steel Erection or its employees. It said that the contract between Turner and Steel Erection " * * * can only be reasonably construed to mean that the provisions therein for indemnity of Turner Construction Company apply to claims and damages arising from the negligent performance by W. J. Halloran Steel Erection Co. of its work under that contract. It certainly, in my judgment, cannot be said to be a guarantee against claims and damages arising by the negligence of Turner Construction Company or through the negligent acts of any persons or parties other than W. J. Halloran Steel Erection Co. and its agents and servants."

Certainly Steel Erection did not do or participate in the crane work in the course of which Houlihan was injured. Nor did it procure that work to be done. Indeed, it was not even given the opportunity either to procure or to do the work. Since no agent or servant of Steel Erection was in any way involved in the work, there is no possible basis for imposing any liability upon it for any legal fault in the way the work was performed. Nor was Houlihan an employee of Steel Erection. He was an employee of W. J. Halloran Co., apparently a wholly separate and distinct corporation. One or the other, or both of these facts together, render the cases upon which the appellant relies inapposite. This case appears to be one of first impression to be decided upon its own particular facts.

The change order, issued by Turner only after the crane work was finished, may have been effective to add that work to Steel Erection's contract. But the fact remains that Steel Erection neither procured the work, nor did it, nor had an opportunity to do either. Actually the change order only made Steel Erection the conduit through which Turner paid W. J. Halloran Co. for the work. Thus, if Steel Erection is liable to Turner, it can only be because Steel Erection agreed to indemnify Turner for its liability to third persons for its negligence in performing work which it did and which Steel Erection neither procured nor performed. Stated differently, the question before us is whether Steel Erection, in the language of the contract quoted above, obligated itself to indemnify Turner for the consequences of Turner's own negligence in doing certain work which, while in a technical sense was work provided for in Steel Erection's contract with Turner, actually was work which Steel Erection neither did under its contract nor even had an opportunity to do.

The record does not show whether the contract between Turner and Steel Erection was executed in Rhode Island or not. We may assume, however, from the surrounding facts that it was executed in that State. But however that may be, it certainly was to be performed in Rhode Island, and in the absence of express provision otherwise, that is enough to make Rhode Island law applicable to its interpretation. The law in Rhode Island, however, does not help us much, for it is not clear whether under that law indemnity contracts like the present are or are not to be strictly construed against the indemnitee. But whether contracts of this nature are to be strictly so construed or not, we nevertheless think the District Court's interpretation of the indemnity clause quoted above is correct.

Perhaps Steel Erection might have been willing to agree to indemnify Tur-

**444**

ner for the consequences to third persons of Turner's negligence in performing work which Steel Erection did not procure or do but at the most was only required to pay for after it had been completed by Turner. But it can hardly be supposed that a sub-contractor would readily assume so sweeping a liability. Indeed, the likelihood of a sub-contractor undertaking such broad liability is so remote that only an unequivocal manifestation of intent by the use of clear words to that effect would warrant the conclusion that he had actually done so. Standard Oil Company of Texas v. Wampler, 5 Cir., 1955, 218 F.2d 768, and cases cited. We do not find such words in the indemnity clause quoted earlier in this opinion.

■ The appellant in its argument lays great stress upon the inclusiveness of the general language used in the first part of Article XV quoted above. It must be noted, however, that such phrases as "entire responsibility and liability," and "any and all damage or injury of any kind or nature whatever," and the like, are qualified by the phrase "growing out of or resulting from the execution of the work provided for in this contract or occurring in connection therewith." The hoisting work in the prosecution of which Houlihan was injured was not work provided for in the original contract. It was included in the work called for in the contract only by the change order issued after the work was finished. In a technical sense this may have made it work "provided for in the contract." But as we have already pointed out, it did not and could not make Steel Erection responsible *ex post facto* for negligence in doing the work. Construed literally, the indemnity provision might be interpreted in such a way as to impose liability on Steel Erection. But to so interpret the provision would be to construe it strictly against the indemnitor, for which there is no authority in Rhode Island or anywhere else so far as we know. On the contrary, the indications of Railton v. Taylor, 1897, 20 R.I. 279, 38 A. 980, 39 L.R.A. 246, are that in

Rhode Island, as generally elsewhere, indemnity contracts of the kind under consideration are construed strictly against the indemnitee, with the result that an undertaking to indemnify against the indemnitee's own negligence will not be inferred from doubtful language but must be clearly and unequivocally expressed. Obviously there is no such clear and unequivocal language in the contract under consideration.

The judgment of the District Court will be affirmed.