John D. REAGAN, Appellant,

v.

SINCLAIR REFINING COMPANY,
Appellee.

No. 20165.

United States Court of Appeals
Fifth Circuit.

June 25, 1963.

Rehearing Denied Aug. 12, 1963.

W. Jiles Roberts, Houston, Tex., for appellant.

Frank G. Harmon, R. Gordon Gooch, Houston, Tex., Baker, Botts, Shepherd & Coates, Houston, Tex., of counsel, for appellee.

Before HUTCHESON, Circuit Judge, LUMBARD, Chief Judge*, and BROWN, Circuit Judge.

LUMBARD, Chief Judge.

The plaintiff seaman appeals from a judgment rendered on a jury verdict for

* Of the Second Circuit, sitting by designation.

the defendant in the United States District Court for the Southern District of Texas. We affirm.

John D. Reagan, the plaintiff, was employed by the defendant, Sinclair Refining Company, as an able-bodied seaman on the crew of the S. S. Superflame from October 1958 to August 1960. At about 9:30 A.M. on January 15, 1959, the plaintiff, asleep in his bunk, fell out of it onto the deck. He sustained injuries, to recover for which he brought this action.

Ships' bunks are customarily equipped with a guard rail on the side of the bunk next to the sleeper's head. The rail, which is several inches above the level of the mattress, is intended to warn the sleeper when he is at the edge of the bunk, so as to keep him from falling out of the bunk when the ship rolls. The S. S. Superflame was equipped with such guard rails. Sometime before January 1959, however, cotton mattresses formerly in use were replaced by thicker innerspring mattresses, which raised the level of the bunks. The plaintiff contended that because of this the guard rail furnished inadequate protection against falling out of the bunk, and that the defendant's failure to provide an adequate guard rail was the cause of his accident. He predicated recovery on the theories of negligence, pursuant to the Jones Act, 46 U.S.C. § 688, unseaworthiness, and the violation of a statutory duty to furnish seamen with a berth "securely constructed," 46 U.S.C. § 660–1. The jury answered special interrogatories favorably to the defendant, and judgment was entered in accordance therewith.

The plaintiff contends that the trial court committed reversible error in excluding testimony of Captain Scully, an expert witness for the plaintiff. Captain Scully was qualified as a seaman with long experience. Over the defendant's objection, the trial judge permitted the following exchange between Captain Scully and counsel for the plaintiff:

"Q. I'll ask you whether or not you have an opinion that the guard rail that is shown on the upper bunk in those two pictures is of a proper height, considering the purpose for which it is intended.

\* \* \* \* \* \*

"A. Well, the guard rails have always been provided on bunks to provide the protection. In this instance it would appear that the height of the mattress negates the value for which the guard rail was originally intended.

"Q. Now, Captain, if the mattress is to be that thick, do you have an opinion as to whether or not the guard rail should be at its present level as shown by those pictures, \* \* \* or whether it should be at a higher level?

\* \* \* \* \* \*

"A. If a mattress were to continue at this height, then, obviously, the guard rail that is going to serve the function of protection should be raised, or some other safety measure added to provide that degree of safety for which a guard rail is originally intended."

The trial judge did not permit Captain Scully to say whether in his opinion a "reasonably prudent vessel-operator would provide a guard rail at a higher level. \* \* \*" Nor did he permit Captain Scully to answer whether the bunk shown in the exhibited pictures was in his opinion "reasonably suitable to be occupied by seamen at sea." Objection to the former question was sustained on the ground that Captain Scully had not been shown ever to have been an operator, and to the latter on the ground of repetitiveness.

■■ The admission of expert testimony is ordinarily a matter within the discretion of the trial judge. Salem v. United States Lines, 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962); Roth v. Bird, 239 F.2d 257, 261–262 (5 Cir.,

1956); 2 Wigmore, Evidence § 561 (3d ed. 1940). In the Salem case, supra, also involving unseaworthiness and negligence under the Jones Act, the Supreme Court said that the action of the trial judge in admitting or excluding expert evidence "is to be sustained unless manifestly erroneous." 370 U.S. at 35, 82 S.Ct. at 1122, 8 L.Ed.2d 313. Without deciding whether the questions were technically subject to the specific objections urged, we see no harmful error in either of the rulings attacked here. As the quoted portion of the transcript indicates, the witness had already given his expert opinion in answer to questions substantially the same as those which he was not permitted to answer. His opinion as to whether a prudent operator would have provided a higher guard rail or whether the bunks were "reasonably suitable to be occupied" would have added nothing to the obvious import of his opinion that the guard rails did not furnish adequate protection. Under these circumstances, the rulings of the trial judge were well within the range of his discretion.

■ Objection is made to the admission of testimony, elicited during the cross-examination of the plaintiff, that the innerspring mattresses had been furnished at the request of the National Maritime Union, as a result of bargaining between the union and the shipping companies. The basis of the objection is that the testimony had no bearing on the issue in dispute, since neither the plaintiff nor the union could contract away the defendant's duty to furnish a safe bunk. But the reason for replacing the cotton mattresses with innerspring mattresses and the fact that the defendant was not the only shipowner to make the change had some relevance to the issues as framed by the plaintiff. Counsel for the defendant stated before the jury at the time the testimony was given that he did not claim that the

negotiations with the union detracted "at all from the obligation of the defendant to furnish a seaworthy bunk and to exercise ordinary care." And the judge included in his charge to the jury the following:

"You are instructed that neither the plaintiff, John D. Reagan, nor the National Maritime Union can make any kind of contractual arrangement with the Defendant, Sinclair Refining Company, whereby the Defendant, Sinclair Refining Company, is excused from any of its duties to the Plaintiff.

"You are instructed that the action of the National Maritime Union in securing the use of innerspring mattresses on board the S. S. Sinclair Superflame does not lessen the duty of Sinclair Refining Company to furnish the Plaintiff a proper berth to use while aboard the S. S. Sinclair Superflame."

This instruction removes all basis for objection to the testimony in question. See R. G. Le Tourneau, Inc. v. Simoneaux, 230 F.2d 157, 161 (5 Cir., 1956).

■ The plaintiff objects next to the failure to instruct the jury concerning the defendant's duty to furnish a "securely constructed" berth under 46 U.S.C. § 660–1 and to submit to the jury interrogatories based on this theory of liability.[1]

The interrogatory which the plaintiff requested on this issue was:

"Do you find from a preponderance of the evidence that the berth occupied by the Plaintiff, John D. Reagan, at the time and on the occasion in question was not securely constructed as that term is defined herein?"

"Securely constructed" as applied to the berth in question was defined as meaning "a berth that is so constructed that it could be used by a member of the crew

---

1. Since we dispose of this issue on other grounds, we have no need to consider the argument of the defendant that liability in this case cannot be predicated on a violation of 46 U.S.C. § 660–1. Compare Kernan v. American Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958).

of the S. S. Sinclair Superflame as a safe place to sleep."

An interrogatory was submitted to the jury on the question of unseaworthiness. The duty to furnish a seaworthy vessel was defined for the jury as the:

"duty to furnish a vessel and appurtenances reasonably fit for their intended use. The defendant does not have to guarantee the safety of the seaman. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service."

It is apparent from a comparison of the requested interrogatory and that actually given, each accompanied by the relevant definition, that the matter of secure construction was adequately covered in the interrogatory which was submitted. The plaintiff suggests no significant difference between them, nor does he suggest any respect in which liability under § 660–1 differs from liability for unseaworthiness, which is absolute, Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). Although the requested interrogatory called particular attention to the bunk in which the plaintiff slept and the interrogatory on unseaworthiness was phrased more generally, all the evidence at the trial was concerned with the bunk; the general nature of the interrogatory on unseaworthiness could not have left the jury in any doubt about what factual issue was before it. There is no harm, and no reversible error, in the failure to submit to a jury an additional charge on a theory of liability which has already been charged in different words. E. g., New Orleans & Northeastern R. R. v. Anderson, 293 F.2d 97 (5 Cir., 1961); Maryland Casualty Co. v. Broadway, 110 F.2d 357 (5 Cir., 1940); see Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 332, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960).

■ The plaintiff urges finally that the trial court should have granted his motion for a directed verdict. Although there was no dispute at the trial that the innerspring mattress had raised the level of the bunk, the adequacy of the guard rail was hotly contested. The plaintiff's own expert witness testified on cross-examination that if a man's weight depressed the mattress a few inches, the guard rail would be adequate. Another witness testified that the mattress on the plaintiff's bunk sagged, at least in the middle, more than two inches when someone lay on it. There was other evidence that a man's weight depressed the level of the mattress. This was sufficient evidence to warrant submission of the case to the jury, and we see no reason to overturn its verdict. E. g., Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 358–359, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962).

Affirmed.