Eustace WEEKES, Plaintiff-Appellee,

v.

**MICHIGAN CHROME & CHEMICAL COMPANY, a Michigan Corp., Defendant-Appellant.**

No. 15796.

United States Court of Appeals
Sixth Circuit.

Nov. 10, 1965.

Edwards, Circuit Judge, dissented in part.

**604**

Harold B. Desenberg, Detroit, Mich., Moll, Desenberg, Purdy, Glover & Bayer, Detroit, Mich., on brief; Humphreys Springstun, Detroit, Mich., of counsel, for appellant.

George L. Downing, Detroit, Mich., Kelman, Loria, Downing & Craig, Detroit, Mich., on brief, for appellee.

Before MILLER, O'SULLIVAN and EDWARDS, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Plaintiff-appellee, Eustace Weekes, contracted a serious skin condition as a result of working with "Miccrowax C–600," sold by defendant-appellant, Michigan Chrome & Chemical Company.[1] A jury awarded him $24,000 damages in an action charging that defendant had negligently failed to provide adequate warning of the dangers involved in using this wax and to advise the proper precautions for avoiding them. Appellant charges that the District Judge erred in denying its motion for a directed verdict, in rulings on evidence and in the instructions given to the jury.

I) *Motion for directed verdict.*

■ On this subject, we state the facts as the jury could have found them most favorable to plaintiff. Upon critical points, defendant's proofs contradicted plaintiff's, but the issues thus made were for the jury's decision.

Weekes was employed by B & H Hard Chrome Company where Miccrowax C–600 was used as a "stop-off" in chrome plating various items to prevent plating of all but the proper areas. First, items to be plated were "dipped" in the wax, then the wax was "trimmed" from the areas to be plated, and finally after plating the wax was "stripped" from the finished item and set aside for reuse. Weekes performed each of these three operations before his skin trouble developed, but the jury could find from his testimony that he quit "dipping" thereafter on medical advice to avoid contact with fumes of the melted wax. Dipping operations were performed during this period in a separate shed, ventilated by an open door, a window, another window equipped with a twenty inch ventilating fan, and a hole in the roof. During dipping operations as well as at all other times, Weekes was fully clothed. Although he handled the wax with his bare hands "two or three" times, and occasionally removed a glove for delicate trimming work, Weekes habitually wore gloves while working with the wax.

Slightly more than a year after plaintiff began work for B & H, he began to notice a skin disturbance which was shortly diagnosed by a dermatologist as "one of the most typical and most severe" eruptions of chlor-acne that he had seen. This condition, occurring over substantially all of plaintiff's body, is produced not by an allergic reaction but by a mechanical stuffing of the skin pores. Defendant states in its brief to this Court that "it is necessary to wear protective

---

1. Michigan Chrome & Chemical did not itself manufacture the wax, but distributed it in a manner frankly calculated to suggest that it was the manufacturer. It does not deny knowledge of its dangerous properties. No argument is made that it should not be treated as manufacturer for purposes of this case.

clothing and have an adequate exhaust system when working with this material to avoid contacts which cause skin trouble, such as that suffered by plaintiff." Plaintiff testified, however, that he had not known of any danger in using the wax before his condition was diagnosed, and that he thereafter followed what he understood to be his instructions to avoid the fumes given off by the heated wax. As to his understanding of and obedience to this doctor's advice, Weekes' testimony was in conflict with that of his doctor, but it was for the jury to resolve the issue so made. Dickerson v. Shepard Warner Elevator Co., 287 F.2d 255, 260 (CA 6, 1961).

Defendant acknowledges the dangers inherent in using its wax, and introduced proof to show an invariable custom of selling it with certain warning labels. There was testimony that plaintiff's employer, B & H, obtained the wax only through an intermediary, the Plating Products Company. Recognizing that its wax is frequently resold by distributors in smaller lots, it also sought to show that it had reasonable grounds for anticipating that Plating Products knew of the danger involved and would assure proper relabeling of small lots.

To counter this general proof, plaintiff offered evidence that wax was received in its original containers both directly from defendant and also from Plating Products without any warning labels at all until after plaintiff's trouble began and a sample label was obtained from Plating Products. It was also testified that wax was obtained from Plating Products in smaller packages which carried no warning and that even after the trouble began, the only warning ever seen by plaintiff or his employers was the red label described below. To show the inadequacy of Plating Products' knowledge as an "informed" middleman, there was evidence that literature on the wax was requested when B & H was introduced to it by Plating Products as a stop-off peculiarly suited to high-temperature plating processes, but that B &

H was provided only with information as to the melting point. Further bearing on Plating Products' knowledge of the dangers and appropriate precautions involved, it was testified that its salesman simply warns new customers "that the material does require ventilation in the use of it," and that when a Plating Products official learned of plaintiff's trouble he contacted defendant's representative "knowing that there was a danger in using the wax, would that be the reason?"

Beyond his proofs designed to show defendant as well as Plating Products actually failed to employ the claimed warnings, plaintiff challenged the adequacy of the claimed warnings themselves. The red label which plaintiff and his employer testified they first saw following the beginning of plaintiff's trouble reads as follows:

CAUTION

WARNING

Do not get in eyes, on skin, or on clothing. Avoid breathing vapors. Use in adequate ventilation. In case of contact—wash skin with soap and water; flush eyes with plenty of water for at least fifteen minutes and get medical attention.

Another label claimed to be used by defendant warns: "CAUTION: MICCRO-WAX C–600 is chlorinated. Adequate ventilation should be provided to exhaust all fumes from the pot and personal cleanliness should be emphasized in handling coated parts." Finally an instruction folder states "adequate ventilation should be maintained to eliminate inhaling of vapors. Contact with the skin should be avoided."

We believe the jury could determine that such warnings do not exhort greater precautions of dress and ventilation than those they could find were actually observed by plaintiff. Beyond this possibility, moreover, there was some positive evidence of the insufficiency of the warnings. Initially, it should be made clear that chlor-acne can be a very serious condition, possibly irreversible,

and that anyone is likely to develop it on sufficient exposure to defendant's wax or its fumes. Plaintiff's employers had been in the plating business for twenty years when his trouble developed, but testified they were unaware of the proper procedure for using the wax and one said that when materials should not come in touch with the skin "usually they are very clearly marked." Defendant's own foreman does not rely on the labels to warn its employees about handling the wax, and there was evidence that its own sales representative viewed the dipping shed used by Weekes and found it adequately ventilated. Although one label states the wax is chlorinated and a witness testified that "any high school boy or public school boy knows that chlorine gas is dangerous," it was made clear at trial that chlorine will not cause chloracne except in combination with certain hydrocarbons, particularly chlorinated naphthalenes (as used in this wax) or diphenyls. Finally, we have already noted that defendant's brief here recognizes the need for "protective clothing;" one of plaintiff's experts testified that adequate types of clothing might include elbow-length gloves, aprons with sleeves, and plastic face masks. This witness testified that plaintiff's illness could follow exposure of the skin to the fumes from the melted wax, without inhaling or actual contact with the wax itself.

■ The foregoing evidence favorable to plaintiff was sufficient, we believe, to support a jury determination that defendant was negligent either in failing to take steps which would justify a belief that its label would come to the attention of an ultimate user of its wax or in adopting labels inadequate to warn of the dangers and precautions necessary in using the wax. There was some uncertainty at trial as to what law should govern this case because the wax was distributed from Michigan and used by plaintiff in New Jersey. This problem was finally resolved by an understanding that New Jersey law should govern, presumably in accord with the traditional choice of the law of the place of injury. No reason appears for examining the problem further, however, since we believe New Jersey and Michigan would apply identical principles in measuring plaintiff's proofs.

■■ As in many negligence situations, we are not pointed to any clearly dispositive precedents. The general rule in regard to a supplier's duty to warn of known dangers in the ordinary use of his products is found in Restatement, Torts § 388 (1934):

"One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied;

(b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so."

That New Jersey would follow this general principle is made clear by the decisions in Roberts v. United States, 316 F.2d 489, 494 (CA 3, 1963) and Martin v. Bengue, Inc., 25 N.J. 359, 136 A.2d 626, 630 (1957). Michigan too recognizes "[t]he duty to warn of known danger inherent in a product, or in its contemplated use" as "a part of the manufacturer's liability doctrine." Comstock v. General Motors Corp., 358 Mich. 163, 176, 99 N.W.2d 627, 78 A.L.R.2d 449 (1959). See also Gerkin v. Brown & Sehler Co., 177 Mich. 45, 60, 143 N.W. 48, 48 L.R.A.,N.S., 224 (1913); Clement v.

Crosby & Co., 148 Mich. 293, 295, 111 N.W. 745, 10 L.R.A.,N.S., 588 (1907) (semble); 2 Harper & James, The Law of Torts, § 28.7 (1956). Defendant claims that it took all reasonable precautions to ensure that adequate labels were actually attached to all shipments and that it reasonably selected an informed intermediary to ensure relabeling of smaller packages. It is further urged that the dangers involved were so well known in the industry where this special wax was used that there was really no duty to warn anyway. We have already noted the evidence upon which the jury could reject each of these claims.

■ Defendant asserts that it was not required to see to it that each person who might be expected to use the wax was individually and by defendant adequately warned of its dangerous propensities. We make clear that we do not hold to the contrary. To do so would visit upon a manufacturer a burden impossible to carry. See Bertone v. Turco Products, Inc., 252 F.2d 726, 728 (CA 3, 1958); Nishida v. E. I. Du Pont De Nemours & Co., 245 F.2d 768, 773–774 (CA 5, 1957), cert. denied, 355 U.S. 915, 78 S.Ct. 342, 2 L.Ed.2d 275 (1958). We consider, however, that defendant was required to exercise reasonable care to provide adequate warnings on its own containers and to reasonably assure itself that its immediate vendee and distributor was so informed as to be able and likely to transmit to those who would purchase and use this wax knowledge of its dangers and of the needed precautions. Notwithstanding defendant's contrary proofs, there was evidence from which the jury could find that defendant did not exercise reasonable care in its own labelling practices or in informing Plating Products of the hazards involved in using the wax. If it was thus delinquent, it could not rely on Plating Products to supply the needed warnings and precautionary instructions. We find no error in the denial of defendant's motion for a directed verdict.

## II) *Exclusion of expert testimony as to common knowledge of danger.*

■ Defendant offered a witness who as an expert would have testified that "the dangers inherent in the use of this and the necessary precautions to avoid these dangers are a matter of general knowledge in the plating industry." An objection to such proffered testimony was sustained. We believe that such testimony could properly have been received as relevant to the defense relied upon. On the record before us, however, we are not persuaded that the District Judge's ruling so affected the substantial rights of the defendant as to call for reversal. Rule 61, F.R.Civ.P. There had been received other evidence which defendant's brief here asserts was proof that "these things [the dangerous properties of this wax] are matters of common knowledge in the industry." The expert claimed familiarity with the practice in plating shops in Michigan, Ohio, Indiana, Illinois, and Florida, whereas the events here involved occurred in New Jersey where both Plating Products, defendant's distributor, and B & H Hard Chrome Company, plaintiff's employer, carried on their business. It is further to be noted that defendant by its own actions readily conceded the need for specific warning and in sustaining the objection the District Judge said, " * * * you did give warning. * * * You did have this red label on it. * * * You did say to your people, 'Listen, be careful how you use this commodity.' So you did think that warning was necessary." And the District Judge concluded that, "I don't think it is expert testimony. *I don't think it helps the jury in any way.*" (Emphasis supplied.) In finding that the questioned ruling did not constitute reversible error, we follow the view of the Supreme Court that "the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained *unless manifestly erroneous.*" Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962) (Emphasis supplied.) See

also Krizak v. W. C. Brooks & Sons, 320 F.2d 37, 42 (CA 4, 1963); Reagan v. Sinclair Ref. Co., 319 F.2d 363, 364–365 (CA 5, 1963); cert. denied, 376 U.S. 956, 84 S.Ct. 975, 11 L.Ed.2d 974 (1964); Rhynard v. Filori, 315 F.2d 176, 178 (CA 8, 1963); Cohen v. Western Hotels, Inc., 276 F.2d 26, 27 (CA 9, 1960); Harris v. Afran Transp. Co., 252 F.2d 536 (CA 3, 1958); E. L. Farmer & Co. v. Hooks, 239 F.2d 547, 553 (CA 10, 1956), cert. denied, 353 U.S. 911, 77 S.Ct. 699, 1 L. Ed.2d 665 (1957); Schillie v. Atchison, T. & S. F. Ry., 222 F.2d 810, 814 (CA 8, 1955).

### III) *Claim of inadequate and improper instructions.*

Defendant charges that the District Judge erred by giving plaintiff's statement of claim which asserted a duty of defendant to communicate actual notice and instruction to plaintiff; by failing to give its proffered instruction defining defendant's duty to plaintiff; and by the instructions given on contributory negligence. We are of the opinion that viewed in its entirety the charge did not give the jury correct advice as to the respective duties of the plaintiff and the defendant.

### A. Plaintiff's Statement of Claim.

The Court's charge recited plaintiff's claim which contained the following:

" * * * it is *his* [plaintiff's] *claim* that the injury occurred because there weren't proper notices and warnings *communicated* to him *by the Defendant, Michigan Chrome & Chemical Company.*"

"The Plaintiff's position is that in light of the testimony that this commodity, chlorinated wax, would create the injuries from which he suffers, unless proper warnings and safeguards *reached him,* the *Defendant failed to do that which the law imposes upon the Defendant*—the use of ordinary care under the circumstances."

"You know it is the claim of the Plaintiff that the Defendant's negligence, its failure to give proper warnings *which would reach this Plaintiff, was negligence* and was a proximate cause of the injury." (Emphasis supplied.)

Such advice, qualified as being only the claim of plaintiff, did not directly tell the jury that in the judge's view applicable law required defendant to communicate the needed warning *directly to plaintiff.* The language employed, however, could, if not clarified, give the impression that defendant had a duty to directly advise each user of its wax of the dangers involved. Because of our consideration of the entire charge, we need not here speculate whether it is improper to include in an instruction a plaintiff's claim which charges a defendant with a duty greater than what the law imposes.

### B. Instructions on Defendant's Duties.

The District Judge refused to give defendant's requested instructions No. 19 and No. 24.

"No. 19. The evidence here shows that the distributor, Plating Products, resold the Miccrowax C–600 to its own customers and the defendant here was not required to see to it that Plating Products passed on to its customers notice of the necessary precautions to be observed *if Plating Products was sufficiently informed of the injuries which might result from improper use.*"

"No. 24. If Plating Products had knowledge of the precautions to be exercised, *it is not necessary for you to even consider whether this information was communicated to the plaintiff or his employer, B & H Hard Chromium Company,* because the defendant would not be liable for the failure of Plating Products to pass the information on to B & H nor for any failure of B & H to pass on the information to the plaintiff." (Emphasis supplied.)

To test the propriety of the refusal of such instructions, we must examine what the Court did tell the jury to be the law which fixed the defendant's duties. In addition to the above quoted excerpts from the Court's recital of the plaintiff's

claims, the following is the total of the District Judge's definition of such duties.

"Now, what is the Plaintiff's claim? He claims that the Defendant, Michigan Chrome, was negligent. Negligence in this case means the failure to do that which an ordinary, prudent person would do under the circumstances. Now, the word 'ordinary' is not an abstract term. I say, 'under the circumstances.' "

"So the nub of the case, it would seem to me, is did the Defendant use the kind of care which the circumstances required in vending this particular commodity?"

"Then the Plaintiff has this other requirement placed upon him by law. He must show that the negligence of the Defendant was a proximate cause of the injury and the consequences of the injury."

"I must say to you that we only have one lawsuit before us—that is the lawsuit of Eustace Weekes against the Michigan Chrome & Chemical Company. There may be others who might be liable. You are not to consider that. You are only to consider whether the Defendant carried out its responsibilities to this Plaintiff."

"You understand that when you go into the jury room, you consider the question of whether or not the Defendant was negligent; should it have done more than it claims that it did do *in warning the employee of the plant* that there were inherent properties in this particular commodity which, when used without proper safeguards, would result in injury * * *."

## C.   Instruction on Contributory Negligence.

The trial judge advised the jury that the defendant had, as an affirmative defense, charged plaintiff with contributory negligence. He then stated "in this particular case his [plaintiff's] negligence would consist of this: *that know-*

*ing that this chlorinated wax had injurious qualities,* he continued to use it." (Emphasis supplied.) No further definition of contributory negligence was given.

In the colloquy which followed the charge, defendant's counsel took exception to the failure to give its above-quoted requests No. 19 and No. 24, and objected to the instructions on contributory negligence, urging that the Court should have given the following proffered instructions,

No. 13. "Thus in this case the plaintiff is called upon to prove that he was ignorant of the necessary precautions to be observed in using Miccrowax C–600, because of negligence on the part of the defendant to give a notice which was reasonably adequate under the circumstances and that such negligence of the defendant, if any, was the proximate cause of the injuries which plaintiff suffered."

No. 25(B) "If you find that the plaintiff carelessly proceeded to make use of this material without obtaining the information or making the observations which a reasonably prudent person would have obtained or made, or that he failed to exercise the care which a reasonably prudent person would exercise in protecting himself against such injuries, and if you find that his acts or omissions in this respect were a proximate cause of his injuries, then he would not be entitled to recover for such injuries from the defendant."

## D.   The Total Charge.

From our reading of the instructions that were given, including the recital of plaintiff's claim, we cannot escape the conclusion that the jury would gain the impression that defendant was negligent unless it could show that advice of the dangers of the wax and the needed precaution *actually reached the plaintiff,* and that plaintiff could not be found guilty of contributory negligence unless

he *actually knew* of the dangers of the wax and needed precautions of its use.

In holding that there was sufficient evidence to go to the jury as to defendant's negligence we have said above that the giving of needed advice to the intermediary, Plating Products, would not necessarily absolve defendant from actionable fault. We likewise have said that the law has not fixed an inflexible rule that defendant will stand convicted of fault unless it shows that the needed information actually reached the plaintiff. The test is whether defendant exercised reasonable care under all the circumstances.

We deal here with a subject that presents refined, but often shadowy distinctions. The difficulties that beset the authors of the Restatement expose the problem. They say,

"The supplier's duty is to exercise reasonable care to inform those for whose use the article is supplied of dangers which are peculiarly within his knowledge. If he has done so *he is not subject to liability, even though the information never reaches those for whose use the chattel is supplied."* Comment j to § 388. (Emphasis supplied.)

The authors, however, qualified the foregoing with observations appearing in Comment i to § 388,

"The giving to the third person through whom the chattel is supplied all the information necessary to its safe use is not *in all cases* sufficient to relieve the supplier from liability. It is merely a means by which this information is to be conveyed to those who are to use the chattel. *The question remains whether this method gives a reasonable assurance that the information will reach those whose safety depends upon their having it."* (Emphasis supplied.)

In the case at bar it was for the jury to determine whether defendant did label adequately all of the material that it sent to Plating Products and did supplement such labeling with direct advice to Plat-

ing Products in such manner as would justifiably convince a reasonably prudent person that such advice and warning would reach the remote user of the wax. Upon its own findings of fact and its appraisal thereof, the jury could determine whether defendant exercised the requisite due care.

We have set out above everything that the trial judge's charge contains in defining defendant's duty. In it we do not find specific articulation of the rule we have discussed. The several general observations that "negligence in this case means the failure to do that which an ordinary, prudent person would do under the circumstances" and that "the nub of the case * * * is did the Defendant use the kind of care which the circumstances required in vending this particular commodity" and that plaintiff "must show that the negligence [undefined] of the defendant was a proximate cause of the injury and the consequences of the injury" and that the jury should "consider the question of whether or not the defendant was negligent; should it have done more than it claims it did do *in warning the employee of the plant* that there were inherent properties in this particular commodity which, when used without proper safeguards, would result in injury", fall short in our view of an adequate statement of the applicable rule. This is especially so in view of the Court's several statements of plaintiff's claim that defendant was liable because "there weren't proper notices and warnings communicated to him [plaintiff] *by the Defendant, Michigan Chrome & Chemical Company"* and that plaintiff's position was that since the wax would create injuries, "unless proper warnings and safeguards *reached him*, the Defendant failed to do that which the law imposes upon the Defendant—the use of ordinary care under the circumstances." We need not find reversible error in these latter statements taken alone, identified as they were as plaintiff's claim, but they must be read in the entire context of the charge. Nowhere was the jury told that there could be any conduct of defendant

which would exonerate it short of the actual receipt by plaintiff from defendant of notice of the dangers and advice of the needed precautions. In his further charge to the jury after it had once retired, the trial judge again emphasized plaintiff's claim that defendant was negligent because of "its failure to give proper warnings *which would reach* this Plaintiff * * *."

We have set out above the language by which the jury was told in effect that plaintiff could not be found guilty of contributory negligence except by *"knowing* that this chlorinated wax had injurious qualities, he continued to use it." (Emphasis supplied.) In its exceptions to the charge defendant's counsel urged that plaintiff could be contributorily negligent if the jury should find that he "should have known." From the testimony the jury could have believed that every container that brought the wax to plaintiff's place of work had on it the needed warning labels. They could have believed plaintiff's doctor's testimony that had plaintiff discontinued working with the wax and in addition to the doctor's treatment practiced the hygiene prescribed, the chlor-acne could have been cured; they could have believed the doctor's testimony that his remonstrances with plaintiff after he learned that plaintiff continued exposure to the wax fumes went unheeded; they could have believed that plaintiff "should have known" from the foregoing the dangers to which he was deliberately exposing himself. There was evidence by plaintiff and his employer that from the time of the onset of his skin trouble and while it was yet curable, the containers of wax did carry the warning labels. The jury could find that such labels were adequate advice and plaintiff's failure to heed them would permit a finding that he "should have known" of the dangers involved. Plaintiff received a $24,000 verdict which must have been awarded at least partially because by the time of trial his condition had become chronic and was claimed to be then incurable. He had continued to work in the area of the wax fumes for about two and three-fourths years after his skin trouble began. Surely the jury could have found that at some point the plaintiff "should have known" of the hazard involved in what he was doing. The testified fact that he could not get work elsewhere would not excuse contributory negligence. Because evidence on the subject of Workmen's Compensation was apparently excluded, we do not know whether plaintiff has received help from that source.

We believe that the content of plaintiff's statement of claim, the lack of more specific definition of defendant's duties and the instruction on contributory negligence, in combination prejudiced the defendant. Apart from the precise validity of defendant's proffered requests and exceptions taken, there was sufficient to require a more informative charge on the difficult issues presented. See Turner Construction Co. v. Houlihan, 240 F.2d 435, 439 (CA 1, 1957); Heerman v. Burke, 266 F.2d 935, 940, 73 A.L.R.2d 1206 (CA 8, 1959); Chicago & N. W. Ry. v. Green, 164 F.2d 55, 61 (CA 8, 1947); Pfotzer et al. v. Aqua Systems, Inc., 162 F.2d 779, 783 (CA 2, 1947); 9 Cyc of Fed.Proc. § 31.88 (3d ed. 1951); 88 C.J.S. Trial § 299, p. 811 (1955).

We have examined other claims of error advanced by appellant and find them without merit.

Judgment reversed and cause remanded for a new trial.

EDWARDS, Circuit Judge (concurring in part and dissenting in part).

I concur fully in the opinion of the court in those portions which deal with the first two appellate issues discussed therein. But, respectfully, I dissent from reversal for new trial on the ground of error in the trial Judge's instructions.

The parties to this litigation had a fair trial of the issues here presented. The jury verdict and the judgment of the court should be affirmed.

I agree fully with Judge O'Sullivan's conclusion that Restatement of Torts § 388 on the issue of the manufacturer's

duty to warn the ultimate user is an excellent statement of general tort law in this field, and consistent with the law of both Michigan (Comstock v. General Motors Corp., 358 Mich. 163, 99 N.W.2d 627, 78 A.L.R.2d 449 (1959)) and New Jersey (Martin v. Benque, Inc., 25 N.J. 359, 136 A.2d 626 (1957)).

But there is nothing in this record that shows that appellant ever asked for this charge. I regard the requests for charges actually made by appellant as both self-serving and inconsistent with the Restatement view.

The trial judge's earnest attempt to deal satisfactorily with this problem is shown in the colloquy between counsel and the judge outside the presence of the jury after the original charge was given, but before the charge was concluded. With counsel he there considered and sought to find an answer to the very problem which is the principal one my colleagues cite in requiring retrial. At the conclusion of this colloquy he did give an additional instruction to the jury to seek to meet the issue. It follows:

"There is something else that I should like to say a word or two about. You know it is the claim of the Plaintiff that the Defendant's negligence, its failure to give proper warnings which would reach this Plaintiff was negligence and was a proximate cause of the injury.

"Now it is the claim of the Defendant that it did every thing that it reasonably ought to have done; and I say to you that if you find that the Plaintiff suffered in this case because of the negligence of others, which negligence was the sole proximate cause of the injury, then the Defendant is not liable, for the simple reason that 'sole' means the exclusive proximate cause; there wasn't any other proximate cause that produced the injuries.

"On the other hand, I must say to you that if you can find that there was, in fact, negligence on the part of the Defendant which was a proxi-mate cause of the injuries, the fact that there was negligence on the part of others which was also a proximate cause—not the only proximate cause, but a proximate cause of the resulting injury—then that does not relieve or absolve the Defendant from liability, of course having in mind all that I have told you about in connection with the other matters that were discussed with you this morning—that is, burden of proof on the part of the Plaintiff, burden of proof upon the Defendant in the affirmative defense on Plaintiff's alleged contributory negligence."

By this I believe that the trial judge in general language made clear that defendant could not be held liable for the acts of an intermediate or intervening party, but only for its own negligence as established by the record.

The trial record convinces me that this issue was effectively presented to the jury in the examination and cross-examination of witnesses, and that this general instruction was sufficient to tell them the negligence law which they should apply to the fact problems in this case.

For still another reason, I believe that we should not find reversible error in the trial judge's charge on negligence.

Let us look at the undisputed facts. Defendant manufactured and placed on the market a wax for industrial use in plating. The wax had the wholly innocent appearance of soap flakes. But it actually is (and defendant knew it) a mixture of chlorinated hydrocarbons and contains a total chlorine content of 60%. The company also knew (and its instructions so stated) that this wax was to be heated to 300 degrees when in use in the plating process, and that at this temperature it would give off vapor. It also knew that that vapor could create in human skin exposed to it a permanent and disabling condition known as chloracne.

In selling this hazardous product defendant insists (and plaintiff denies)

that it labeled its wax cans with a number of warnings. Defendant insists that these warnings either did reach plaintiff, or that the method of warning it chose was reasonably calculated to cause the warnings to reach plaintiff. Again plaintiff enters denials.

It is the trial judge's failure to give detailed instructions on the complex question of the manufacturer's responsibility for actually or constructively warning an ultimate user that is said to be reversible error.

To me this wholly disregards the undisputed facts just recited. Assuming the warnings claimed by defendant were given—assuming they were received by plaintiff—they *totally failed to warn* him either as to the nature of the substance he was using, the danger of exposing his skin to its vapor, the requirement that for safe use he had to employ complete protective clothing, or the name or nature of the disease which would overtake him if he didn't take these extraordinary (and never suggested) precautions.

Under these facts, whether plaintiff did or did not receive the warnings was irrelevant. If he had received them, they would not have told him not to expose his skin to this vapor or that he had to wear protective clothing when working in it.

Judge O'Sullivan's opinion (after reciting all of defendant's warnings) noted:

"We believe the jury could determine that such warnings do not exhort greater precautions of dress and ventilation than those they could find were actually observed by plaintiff. Beyond this possibility, moreover, there was some positive evidence of the insufficiency of the warnings. Initially, it should be made clear that chlor-acne can be a very serious condition, possibly irreversible, and that anyone is likely to develop it on sufficient exposure to defendant's wax or its fumes. Plaintiff's employers had been in the plating business for twenty years when his trouble developed, but testified they were unaware of the proper procedure for using the wax and one said that when materials should not come in touch with the skin 'usually they are very clearly marked.'"

In its brief defendant-appellant states flatly:

"The sort of chattel with which we are dealing here is a chlorinated naphthalene wax which has a number of industrial uses. It is necessary to wear protective clothing and have an adequate exhaust system when working with this material to avoid contacts which cause skin trouble, such as that suffered by plaintiff."

But no warning which it ever initiated (whether received by plaintiff or not) ever said anything like the above.

The trial judge's charge on negligence was fair to defendant-appellant [1] and deprived him of no relevant and material instruction.

As to the portion of the charge dealing with contributory negligence, less needs to be said. The general rule is, of course, that a plaintiff may not recover if he knew *or should have known* the dangerous nature of the product which he was using. The underlined words were not in the charge on contributory negligence as given by the charge judge.

However, I find nothing in this record to present a factual situation from which it may be deduced or inferred that plaintiff should have had knowledge of the dangerous nature of the product. As we have seen, he could not have had it by direct warnings from the labels. But he did get such knowledge by direct warnings from his doctor. There is no factual dispute about whether he *should* have had

---

1. The undisputed facts recited above would have warranted grant of a motion by plaintiff for a directed verdict on the issue of negligence; however, the docket entries do not disclose that any such motion was made.

knowledge from his doctor's warnings. The factual issue tried to the jury was whether or not he reacted as a reasonable man should react after acquiring such knowledge. This fact issue the jury obviously decided in plaintiff's favor. And there was evidence from which they could properly have done so.

In my judgment on neither issue pertaining to the judicial instructions does appellant show that its rights were substantially prejudiced so as to require reversal for new trial. Rule 61 Fed.R. Civ.P.

